| | |
|---|---|
| DISTRICT COURT OF PARK COUNTY,<br>THE STATE OF COLORADO<br><br>300 Fourth Street<br>Denver, CO 80440 | |
| Appeal from the County Court of Park County<br>Case No. 06T527<br>Presiding Court Judges: Stanley Mayhew and<br>Charles Barton | |
| **Appellant – Defendant:**<br>**DENNIS O'NEIL**<br><br><br>**v.**<br><br><br><br>**Appellee – Plaintiff:**<br>**THE PEOPLE OF THE STATE OF**<br>**COLORADO** | ▲ COURT USE ONLY ▲<br><br>. |
| Attorney for Appellant - Defendant:<br>The Law Offices of Todd Barson, P.C.<br>Heather Beattie, A.R.N. 37417<br>P.O. Box 5406/111 Ski Hill Road<br>Breckenridge, CO 80424<br>Phone: 970-547-7668 or 970-389-6363<br>Fax: 970-547-1857<br>Email: heather_beattie06@yahoo.com | **Case Number: 07CV107** |
| **OPENING BRIEF** | |





TABLE OF AUTHORITY

<u>Cases</u>

<u>Kogan v. People</u>, 756 P.2d 945 (Colo. 1988) …………………...    17

<u>People v. Adler</u>, 629 P.2d 569 (Colo. 1981)…………………......19, 20

<u>People v. Ibarra</u>, 849 P.2d 33 (Colo. Ct. App. 1999)…………..    12

<u>People v. Spoto</u>, 795 P.2d 1314 (Colo. 1990)…………………..  13, 14

<u>People v. Taylor</u>, 545 P.2d 703 (1976)…………………... …....   11, 17

<u>Statutes</u>

C.R.E. 404(b)…………………………………………………  9, 12, 13

C.R.E. 608(b)…………………………………………………  9, 13

# TABLE OF CONTENTS

Table of Authority……………………………………………….. iv

Introduction………………………………………………….…  1

Statement of Issues Presented for Review……………………….. 1, 2

Statement of the Case and Facts…………………………………  2

Summary of the Argument…………………………………  12

Argument……………………………………………………  13

I.     THE COUNTY COURT ERRED WHEN IT PREVENTED
THE DEFENDANT FROM INQUIRING INTO THE
ALLEGED BIAS OF THE PEOPLE'S KEY WITNESS,
DEPUTY PLUTT, UNDER C.R.E.
404(b)……………………………………………………13

II.    THE COUNTY COURT ERRED WHEN IT PREVENTED
THE DEFENDANT FROM INQUIRING INTO THE
ALLEGED BIAS OF THE PEOPLE'S KEY WITNESS,
DEPUTY PLUTT, UNDER THE UNITED STATES
CONSTITUTION AMENDMENT VI AND THE
COLORADO CONSTITUTION ARTICLE II SECTION
16…………………………………………………….. 17

III.   THE COUNTY COURT ERRED WHEN IT DENIED
DEFENDANT'S RIGHT TO A MEANINGFUL
SUPPRESSION HEARING BY REFUSING TO CONSIDER
EVIDENCE BEARING ON THE CREDIBILITY OF THE
PEOPLE'S KEY WITNESS, DEPUTY PLUTT, UNDER THE
UNITED STATES CONSTITUTION AMENDMENT IV AND
XIV AND THE COLORADO CONSTITUTION ARTICLE II
SECTION 7 AND 25……………………………………...  19

IV.   THE COUNTY COURT ERRED WHEN IT FOUND THE
DEFENDANT'S PROFFERED EVIDENCE TO PROVE THE
ALLEGED BIAS OF THE PEOPLE'S KEY WITNESS,
DEPUTY PLUTT, WAS INSUFFICIENT………………… 21

Conclusion……………………………………………………….. 22

THE DEFENDANT, Dennis O'Neil, by and through his attorney,

Todd Barson and the Law Offices of Todd Barson, P.C., submits the

following OPENING BRIEF in the above-captioned case.

## INTRODUCTION

The Appellant/Defendant, Dennis O'Neil, will be referred to as "Mr.

O'Neil." The Appellee/Plaintiff, The People of the State of Colorado will be

referred to as "the People." In an effort to be concise and consistent counsel

has designated the Clerk's Index in this matter by referring to items 1-48 as

volume one (v. 1), the trial court record; item 49 as volume two (v. 2),

Reporter's Transcript (Motion's Hearing) December 27, 2006; item 50 as

volume three (v. 3), Reporter's Transcript (Motion's Hearing) February 12,

2007; and item 51 as volume four (v. 4), Reporter's Partial Transcript (Jury

Trial) February 27, 2007. Thus, citations will reference the District Court's

certified record by volume, page, and line number (v. p. l.).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.     THE COUNTY COURT ERRED WHEN IT PREVENTED THE
       DEFENDANT FROM INQUIRING INTO THE ALLEGED BIAS
       OF THE PEOPLE'S KEY WITNESS, DEPUTY PLUTT, UNDER
       C.R.E. 404(b).

II.    THE COUNTY COURT ERRED WHEN IT PREVENTED THE
       DEFENDANT FROM INQUIRING INTO THE ALLEGED BIAS
       OF THE PEOPLE'S KEY WITNESS, DEPUTY PLUTT, UNDER

THE UNITED STATES CONSTITUTION AMENDMENT VI AND
THE COLORADO CONSTITUTION ARTICLE II SECTION 16.

III.   THE COUNTY COURT ERRED WHEN IT DENIED
DEFENDANT'S RIGHT TO A MEANINGFUL SUPPRESSION
HEARING BY REFUSING TO CONSIDER EVIDENCE BEARING
ON THE CREDIBILITY OF THE PEOPLE'S KEY WITNESS,
DEPUTY PLUTT, UNDER THE UNITED STATES
CONSTITUTION AMENDMENT IV AND XIV AND THE
COLORADO CONSTITUTION ARTICLE II SECTION 7 AND 25.

IV.   THE COUNTY COURT ERRED WHEN IT FOUND THE
DEFENDANT'S PROFFERED EVIDENCE TO PROVE THE
ALLEGED BIAS OF THE PEOPLE'S KEY WITNESS, DEPUTY
PLUTT, WAS INSUFFICIENT.

## STATEMENT OF THE CASE AND FACTS

Mr. O'Neil is a registered land surveyor at Baseline Surveys in
Breckenridge, Colorado.  (v. 4, p. 88, l. 19-22); (v. 1, p. 115).  He is a long
time resident of Fairplay.  (v. 4, p. 128, l. 18-25).  On July 14, 2006 Mr.
O'Neil went to a dinner party for a friend at Alma's Only Bar. (v. 4, p. 88, l.
24-25); (p. 89, l. 2-4); (p. 90, l. 8-9).  He arrived around 6:15 p.m. (v. 4, p.
90, l. 10-11).  Throughout the evening he had a total of three regular-size
(highball glasses) of whiskey and coke. (v. 4, p. 90, l. 22-24); (p. 91, l. 1-3);
(p. 95, l. 2-6).  Mr. O'Neil paid his tab at 11:19 p.m.  (v.1, p. 47); (v. 4, p.
95, l. 24-25).

Mr. O'Neil and his friend, Craig Lamonaca, left the bar at 12:50 a.m. on July 15, 2006. (v. 4, p. 97, l. 1-5). They headed in a Southerly direction on Highway 9 towards Fairplay. (v. 4, p. 98, l. 7-9). Mr. O'Neil testified at trial and the motion's hearing that when he began nearing Fairplay he noted police lights in the distance in his rearview mirror. (v. 4, p. 98, l. 21-25); (p. 99, l. 1-7); (v. 2, p. 39, l. 22-25).

Mr. Lamonaca asked Mr. O'Neil why they were being pulled over and Mr. O'Neil responded that he had no idea. (v. 4, p. 100, l. 7-12). When the police lights approached Mr. O'Neil's vehicle he pulled over, in town instead of the shoulder of the highway. (v. 4, p. 100, l. 16-18); (p. 101, l. 1-3). Mr. O'Neil and Mr. Lamonaca testified that they did not pass a vehicle on Highway 9 their entire ride. (v. 2, p. 37, l. 19-24); (v. 4, p. 99, l. 17-22); (v. 4. p. 116, l. 20-22). In fact, Mr. O'Neil stated he would have remembered another vehicle because "it would have been bright lights right in my eyes." (v. 2, p. 38, l. 4-13). Further, as both parties state there was no other traffic on the highway or in the town of Fairplay at that hour. (v. 4, p. 37, l. 21-23); (v. 4, p. 101, l. 7-12); (v. 4, p. 34, l. 24-25); (p. 35, l. 1).

Deputy Plutt is the grant writer for the Law Enforcement Assistance Fund (LEAF) for Park County. (v. 4, p. 29, l. 13). She is also the number

one DUI arresting deputy in Park County. (v. 4, p. 29, l. 1-10).  The LEAF

grant is given to agencies to pay their deputies overtime for specific holidays

throughout the year; however, the agency is supposed to increase their DUI

arrests by ten to 15 percent. (v. 4, p. 31, l. 11-14); (v. 4, p. 30, l. 20-21).

Deputy Plutt, the arresting officer, testified that she was Northbound

on Highway 9 when she noticed the car coming toward her was over the

yellow center line, actually in her lane, and that she had to swerve onto the

shoulder of the road to avoid a collision. (v. 2, p. 17, l. 8-14); (v. 4, p. 13, l.

2-4).  However, Deputy Plutt was impeached by counsel on that subtle, but

crucial point. (v. 4, p. 34, l. 1-14).  Deputy Plutt testified that, "[a]s I saw the

vehicle coming toward me, I saw that it was somewhat in my lane." (v. 4, p.

13, l. 10-11).  When challenged as to whether Mr. O'Neil was on or over the

yellow line she again testified, "over – I have stated over." (v. 4, p.33, l. 11).

However, after refreshing her memory by looking at her Express Consent

Affidavit (v. 1, p. 115) and her narrative report Deputy Plutt admitted Mr.

O'Neil was "on" not over the yellow center line as her reports had

previously indicated, not as she had testified.  (v. 4, p. 34, l. 9).

coming from his mouth. (v. 2, p. 23, l. 1-2); (l. 8-9); (l. 16-17). Deputy Plutt also testified that Mr. O'Neil used the vehicle door for support. (v. 4, p. 21, l. 17-18). Further, she provided that Mr. O'Neil staggered back to the back of his vehicle where she had directed him to go. (v. 4, p. 22, l. 15-16).

Deputy Reynolds was Deputy Plutt's back up officer. (v. 4, p. 63, l. 22-23). He testified that he "did notice the smell of alcohol coming from his person." (v. 4, p. 63, l. 24-25); (p. 64, l. 1). Deputy Reynolds could not, however, corroborate any additional signs of indicia of intoxication of Mr. O'Neil. (v. 4, p. 68, l. 3-11). Further, Deputy Carrigan, the deputy who checked Mr. O'Neil into the Park County Jail that night, testified that Mr. O'Neil smelled like alcohol and was flushed with bloodshot watery eyes. (v. 4, p. 71, l. 13-21). However, Deputy Carrigan could not corroborate that Mr. O'Neil was staggering, using the desk or the deputy for support while walking, that he had any slurred speech, or that he was disoriented or confused. (v. 4, p. 74, l. 9-21).

As Mr. O'Neil was being pulled over by Deputy Plutt he was already wondering why he was being stopped. (v. 4, p. 100, l. 13-15). Mr. O'Neil asked Deputy Plutt why he was being pulled over and she responded, "you almost hit that delineator post." (v. 2, p. 40, l. 15-18). Mr. O'Neil testified

6

Deputy Plutt testified that she made a U-turn to follow Mr. O'Neil at which point she noticed his vehicle cross the center line again twice and then go off the road and jerk back onto the highway. (v. 2, p. 17, l. 15-18).

Deputy Plutt pulled over Mr. O'Neil at 12:55 a.m. (v. 4, p. 12, l. 22-25); (v. 4, p. 20, l. 21-24). She requested his license, registration, and proof of insurance. (v. 4, p. 19, l. 16-17). She ran his information through dispatch and then returned to Mr. O'Neil's vehicle. (v. 4, p. 38, l. 19-25). Deputy Plutt told Mr. O'Neil he smelled like alcohol and asked whether he had been drinking. (v. 2, p. 23, l. 17-18). Mr. O'Neil sarcastically remarked, "probably too much." (v. 4, p. 37, l. 15-17). Deputy Plutt then asked Mr. O'Neil if he would perform voluntary roadside maneuvers (V.R.M.), which Mr. O'Neil politely declined. (v. 2, p. 23, l. 23-25). The reason Mr. O'Neil declined was because he has two bad knees and believed this would affect any V.R.M.'s. (v. 4, p. 104, l. 1-7). Although, Deputy Plutt never asked Mr. O'Neil if there was a medical reason for not performing V.R.M.'s. (v. 4, p. 104, l. 8-10).

Deputy Plutt testified that Mr. O'Neil fumbled for his license and registration. (v. 4, p. 19, l. 18-20). That he had a flushed face and bloodshot, watery eyes, (v. 4, p. 19, l. 23-24) and a strong odor of an alcoholic beverage

that he believe that statement to be totally inaccurate. (v. 2, p. 40, l. 22-24). Mr. O'Neil then became distrustful of this deputy and decided he would not cooperate. (v. 4, p. 105, l. 5-16).

On September 18, 2006 Mr. O'Neil filed a Motion to Suppress based on the unconstitutional stopping of his vehicle without reasonable suspicion or probable cause. (v. 1, p. 101). Mr. O'Neil then filed a notice of witnesses to include: Garver Brown, Karen McCubbin Linch, Kreg Kennedy, Jeff Hill, Bonnie Meade, Gary Stamper, Jessie Hatfield, and Greg Lamonaca. (v. 1, p. 90).

A hearing was held on the motion on December 27, 2006. (v. 2). Mr. O'Neil argued for the suppression of evidence base on no reasonable suspicion by Deputy Plutt that he was failing to drive in his own lane on July 15, 2006 around 12:55 a.m. (v. 2, p. 3, l. 2-7). It is a factual issue whether Mr. O'Neil weaved at the date and time above; however, Mr. O'Neil maintains he did not weave. (v. 2, p. 41, l. 6-9). Mr. O'Neil offered proof to the court that he has at least five other individuals pulled over for similar reasons at similar hours of the night within the same general time frame as Mr. O'Neil by the same Deputy Plutt with proof that it was without legal justification. (v. 2, p. 59, l. 6-24; p. 60, l. 1-12).

7

Mr. O'Neil maintains Deputy Plutt exaggerated the truth in an effort to pull him over. (v. 2, p. 3, l. 16-20). The County Court found, however, Deputy Plutt credible and probable cause for the stop established, "Defendant's vehicle was traveling in an erratic manner and crossed the center line on and off the roadway twice on the – paved portion of the road way two times, that the officer had to take evasive action to avoid this vehicle when it did cross the center line." (v. 2, p. 65, l. 8-14).

At the same motion's hearing Mr. O'Neil objected to the testimony of Deputy Plutt beyond just that portion of the stop that was in issue. (v. 2, p. 19, l. 15-16). The County Court concluded that he could not pass on the credibility of the officer without knowing subsequent events, stating:

> don't ask me to pass on credibility of the officer without having the opportunity to find out what later transpired because, you know, if I stop six people for crossing the center line and subsequent events indicate all six were sober, then that indicates, well you know, [I have an officer with] faulty vision.

(v. 2, p. 22, l. 8-16). Deputy Plutt testified from reading her reports and the day sheets of others before going to court. (v. 2, p. 30, l. 15-21; v. 4, p. 34, l. 13-14). Deputy Plutt could recall nothing about the driver, Mr. O'Neil, aside from his indicia of intoxication including what he was wearing, if he had glasses, or what type of shoes he had on. (v. 2, p. 32, l. 4-17).

Deputy Plutt testified and the County Court found credible her
testimony that Mr. O'Neil drove over the center yellow line almost crashing
into Deputy Plutt's vehicle, then two more times crosses the center yellow
line and then goes off the shoulder of the road and jerks his car back onto the
highway at which point she activates her emergency lights. (v. 2, p. 17, l. 9-
18); (v. 2, p. 17, l. 19). Mr. O'Neil was apparently able to navigate his
vehicle without incident the approximately quarter mile it took him to get
into the town of Fairplay. (v. 2, p. 17, l. 20-21).

Because the County Court felt this type of criminal suppression,
evidentiary issue was not his suit, the judge allowed counsel to file
supporting briefs. (v. 2, p. 64, l. 15-18). Mr. O'Neil filed a Notice of Intent
to Introduce Other Transactions (CRE 404(b)). (v. 1, p. 88-89). In Mr.
O'Neil's Notice contained the same witnesses as listed above. (v. 1, p. 88).
The People filed a motion in response arguing under Colorado Rule of
Evidence 608(b) this evidence could not be introduced because it was
extrinsic and went to the deputy's character for truthfulness. (v. 1, p. 83-84).

Another Motion's hearing was held on February 12, 2007. (v.3). At
that time Mr. O'Neil again argued to introduce evidence of similar
transactions of the witness under 404(b). (v. 3, p.10, l. 18-22). The County

Court at that time struggled with understanding what character trait the other acts evidence would show. (v. 3, p. 22, l. 4-20). In the end, it too reserved ruling and allowed counsel to file supporting briefs. (v. 3, p. 25, l. 1-14).

Mr. O'Neil filed and Amended Notice providing the same list of witnesses with specific details about the individual, the time of day they were stopped, the date on which they were stopped, and dispositions in those cases. (v. 1, p. 74-76). Specifically, in at least two of those cases the individuals were pulled over by Deputy Plutt at night for weaving all over the road and almost hitting a delineator post. (v. 1, p. 75). Further, the other individuals were pulled over at night for reasons they found to be inaccurate and in one case the individual was told that the Deputy was investigating her sobriety because the car was involved in a DUI the night previous. (v. 1, p. 75).

The County Court issued its Findings and Order on February 16, 2007. (v. 1, p. 72). In its Findings the County Court concluded that the proffered evidence was "marginally relevant." (v. 1, p. 70). Although, it also provided that the evidence was "technically admissible." (v. 1, p. 70). The County Court used the circular argument that it had already decided there was probable cause/reasonable suspicion for the stop in an earlier

hearing. (v. 1, p. 70). Further, the County Court found that "whatever relevance the other stops might have is outweighed by the distraction of the jury from the central issue, whether the defendant was intoxicated." (v. 1, p. 71). For that proposition the County Court cited People v. Taylor, 545 P.2d 703 (1976). (v. 1, p. 71).

Further, the Court found that the proffered evidence would be of little, if any use to the jurors. (v. 1, p. 71). The County Court posited that while the jurors will be trying to determine whether the charges against the defendant have been proven beyond a reasonable doubt that they will also have to determine the veracity of the other witnesses as well. (v. 1, p. 71). The County Court found it to be "unfair to ask them to do so without conducting complete trials in those matters." (v. 1, p. 71). The County Court then concluded that if it allowed the defendant to call these witnesses then it would lead to the "situation in which every trial a defendant could call every person who disagreed with the arresting officer." (v. 1, p. 71).

The County Court found no commonality between the evidence that Mr. O'Neil intended to present and the stop of his vehicle. (v. 1, p. 71). In so finding the County Court noted that some were arrested and some were not, ultimately it concluded because of this the only reason this evidence

11

would be offered is that the witnesses disagree with the deputy. (v. 1, p. 71).

Further, the County Court noted, "disagreement does not prove anything."

(v. 1, p. 71); therefore, the County Court granted the People's Motion to

Preclude Defense Evidence.  (v. 1, p. 72).

## SUMMARY OF THE ARGUMENT

Trial courts are afforded considerable discretion in determining

evidentiary questions of admissibility.  The standard of review for

overturning the trial court on an evidentiary issue is for the appellant to show

that the decision was manifestly arbitrary, unreasonable, or unfair.  People v.

Ibarra, 849 P.2d 33, 38 (Colo. Ct. App. 1999).  The County Court heard all

of the arguments on December 27, 2006 and February 12, 2007 and

reviewed all of the pleadings in the matter.

Yet, the County Court erred when it found that proffered evidence by

Mr. O'Neil against Deputy Plutt was inadmissible under Colorado Rule of

Evidence 404(b), the Confrontation Clause of the 6th Amendment of the

United States Constitution and the Right to a Fair Trial of the 4th and 14th

Amendments of the United States Constitution.  Mr. O'Neil provided to the

County Court specific individuals who would testify to specific previous

acts of Deputy Plutt which went to her plan of operation and overly

aggressive bias to pull over individuals without legal justification during the time period in question.

The County Court did not investigate the merits of Mr. O'Neil's proffered evidence. It simply dismissed the evidence as "marginally relevant...Although technically admissible." (v. 1, p. 70).

The People have argued the applicability of CRE 608(b). Mr. O'Neil has never attempted to introduce this evidence under that rule. CRE 608(b) clearly provides that extrinsic evidence is not permitted to challenge the truthfulness of a witness. That must be proved by opinion or reputation evidence.

## ARGUMENT

I.  THE COUNTY COURT ERRED WHEN IT PREVENTED THE DEFENDANT FROM INQUIRING INTO THE ALLEGED BIAS OF THE PEOPLE'S KEY WITNESS, DEPUTY PLUTT, UNDER C.R.E. 404(b).

The Purpose of allowing 404(b) evidence in at a trial is to allow the jury, not to infer conduct in conformity with previous acts, but to prove motive, intent, plan, scheme, identity, preparation, and knowledge of a witness. The Colorado Supreme Court in People v. Spoto outlined a four part test for determining the admissibility of 404(b) evidence. 795 P.2d 1314, 1318 (Colo. 1990). The Court provided:

> First, we must ask whether the proffered evidence relates to a
> material fact, i.e., a fact "that is of consequence to the
> determination of the action." CRE 401.  If it does we proceed to
> the second question: is the evidence logically relevant, i.e., does
> it have "any tendency to make the existence of [the material
> fact] more probable or less probable than it would be without
> the evidence?" CRE 401. If the evidence is logically relevant,
> we then must determine whether the logical relevance is
> independent of the intermediate inference, prohibited by CRE
> 404(b).  Finally, if the proffered evidence survives the first
> three parts of the analysis, we must assess whether the
> probative value of the evidence is substantially outweighed by
> the danger of unfair prejudice. CRE 403.

795 P.2d at 1318.

First, a material fact of consequence to the action in Mr. O'Neil's case is whether there was reasonable suspicion to pull him over because, as alleged, he had failed to drive in a single lane.  Deputy Plutt's rendition of the event was the only evidence against Mr. O'Neil; therefore, the proffered evidence that Kreg Kennedy and Garver Brown were both pulled over at night during the same general time period for exaggerated weaving all over the road, as was Mr. O'Neil, and that both were arrested, charged, and maintained innocence throughout their ordeal is pertinent to the determination of whether Mr. O'Neil was actually weaving and whether Deputy Plutt had reasonable suspicion to so believe.

14

Second, the proffered evidence is logically relevant.  Again, the issue of whether or not Mr. O'Neil was weaving and thereby providing Deputy Plutt with reasonable suspicion would be less probable if other individuals testified that they were pulled over by the same deputy, on the same highway, at night, in the same general time period and given the same reasons (weaving) and that a jury determined, in one case, that the People did not prove their case beyond a reasonable doubt is logically relevant to Mr. O'Neil's case.

In effect, Mr. O'Neil was offering proof that a specific law enforcement officer was routinely engaging in a pattern of conduct and attempted to show she had an overly aggressive bias to pull over individuals whom she had a hunch were DUI and that was inappropriate and illegal.  If such a law enforcement officer is exaggerating reasonable suspicion for stopping individuals the same theory of relevance that supports the admission of previous similar transactions against other witnesses also applies to this witness, be it ill will, motive, intent, plan, scheme, identity, bias, knowledge, or opportunity.

First, Deputy Plutt had opportunity being in such a position of authority; she had motive because she was the LEAF grant writer and

needed to improve numbers; and she had a plan of and pattern of conduct and overly aggressive bias that rose to the level of pulling people over to, not confirm, but dispel suspicion they may be driving drunk. (v. 1, p. 75, item e).

Third, the prior similar acts of Deputy Plutt are independent, not devoid, of the intermediate inference that she has a bad character. The material fact here is whether Mr. O'Neil was weaving. The prior similar acts of Deputy Plutt would allow the jury to *weigh* the credibility of her statement that Mr. O'Neil was driving all over the road. The prior similar acts of Deputy Plutt do not require the inference she is a bad person or a lier. They simply allow the jury to determine whether she, in fact, was engaged in a pattern of conduct that included pulling over individuals with an exaggerated basis.

Finally, the probative value of allowing the prior similar acts of Deputy Plutt is not substantially outweighed by the danger of unfair prejudice. One of the functions of the rules of evidence is a truth-finding function. The prior similar acts of Deputy Plutt are not unfairly prejudicial to the People, in effect they are matters of public record in many cases. Further, any prejudice that may come from such proffered evidence would not substantially outweigh the probative value of such evidence. The

probative value here is the possible pattern of conduct and overly aggressive

bias of Deputy Plutt to routinely pull over individuals without legal

justification during this time period.

II.     THE COUNTY COURT ERRED WHEN IT PREVENTED THE
        DEFENDANT FROM INQUIRING INTO THE ALLEGED BIAS
        OF THE PEOPLE'S KEY WITNESS, DEPUTY PLUTT, UNDER
        THE UNITED STATES CONSTITUTION AMENDMENT VI AND
        THE COLORADO CONSTITUTION ARTICLE II SECTION 16.

        The right to confront adverse witnesses brought up to testify against

the defendant in a criminal prosecution is "a fundamental element in the

panoply of constitutional protections afforded those accused of crimes."

Kogan v. People, 756 P.2d 945, 959 (Colo. 1988).

        In People v. Taylor the Colorado Supreme Court considered the

bounds of cross examination of a police officer's racial bias. 545 P.2d 703,

705 (Colo. 1976).  The Defendant inquired into the officer's racial bias by

questioning him as to specific arrests of African-Americans he had made

within months of the Defendant's arrest. 545 P.2d at 705.  The officer

disavowed even the slightly hint any of those arrested were racially

motivated.  Id.  In rebuttal, the Defendant was allowed to bring in the

witnesses who were arrested; they testified to racial slurs made by the

officer. Id.  The Supreme Court concluded the trial court had been correct to allow the evidence because it went to the officer's credibility.  Id.

However, the Court was careful to provide that while the evidence should be allowed within broad limits courts should not allow such examination when it would be irrelevant, have no probative force, or if the evidence would have little effect on the witness's credibility.  545 P.2d at 705.  The Court did not allow carte blanche the admission of such evidence; it provided, "while the character of a witness for truth and veracity may be shown, impeachment may not be accomplished by attacking the general character of a witness."  Id. at 706.  The Colorado Supreme Court considered this racial bias to be relevant to the issue of the witness's veracity.  Id.

Here, the County Court refused any presentation of Mr. O'Neil's proffered evidence.  Like Taylor, counsel asked Deputy Plutt on cross if she had ever pulled any body over without probable cause to which she responded, "never." (v. 4, p. 53, l. 11-13).  Mr. O'Neil should have been allowed to introduce extrinsic evidence to the contrary.  First, Mr. O'Neil was not even permitted to inquire of the Deputy whether the arrests had taken place, even though that was considered proper questioning under

Taylor.  Second, Mr. O'Neil was likewise precluded from calling witness

who would have testified they were pulled over without any justification.

Third, the County Court should have allowed the questioning of Deputy

Plutt as to this issue because of the effect it would have on her credibility.

The County Court violated Mr. O'Neil's constitutional right to

confront witnesses against him when it denied any possible mention of the

other instances of conduct without hearing from those individuals or

allowing inquiry of Deputy Plutt.  While the trial court has broad discretion

to permit or deny cross examination of certain topics it does not have the

right to deny defendants their constitutional right to confront their accuser.

It was manifestly unjust, unfair, and unreasonable to deny Mr. O'Neil even

the opportunity to bring in these witnesses in an evidentiary matter, in

addition to being denied the right to question Deputy Plutt in any way about

previous arrests she had made.  The County Court effectively denied

Mr.O'Neil his right to surmount his own defense by preventing any

questioning of Deputy Plutt about her pattern of conduct.

III.    THE COUNTY COURT ERRED WHEN IT DENIED
        DEFENDANT'S RIGHT TO A MEANINGFUL SUPPRESSION
        HEARING BY REFUSING TO CONSIDER EVIDENCE BEARING
        ON THE CREDIBILITY OF THE PEOPLE'S KEY WITNESS,
        DEPUTY PLUTT, UNDER THE UNITED STATES

CONSTITUTION AMENDMENT IV AND XIV AND THE
COLORADO CONSTITUTION ARTICLE II SECTION 7 AND 25.

In People v. Adler, the Colorado Supreme Court outlined the role of

the trial judge in his general responsibilities.  629 P.2d 569, 572 (Colo.

1981).  The test in deciding whether the trial judge conduct did not comport

with due process is "whether the trial judge's conduct so departed from the

required impartiality as to deny the defendant a fair trial."  629 P.2d at 573.

In Adler the defendant was appealing the decision of a trial judge who

pointed out to the prosecution that they should call a certain witness for

evidentiary purposes.  Id.  The Court concluded this did not deny the

defendant a fair trial.  Id. at 574.

In Mr. O'Neil's case he was denied the right to a meaningful

suppression hearing.  The trial judge refused to hear from the witnesses.

However, in his Findings and Order he states the testimony this witnesses

would provide would be marginally relevant.  While the trial judge allowed

two suppression hearings and two opportunities to file supporting briefs, it is

Mr. O'Neil's contention that the trial judge did not afford him the

opportunity to hold a meaningful hearing.  As such the conduct of the trial

20

judge was not impartial and in effect denied Mr. O'Neil the right to a fair trial.

The County Court did not aid in any fact finding in Mr. O'Neil's case and instead precluded any mention of any previous arrests made by Deputy Plutt. Further, it is the job of the jury to pass on the veracity of witnesses. Every time a witness is called the court is not required to have a trial within a trial to prove or disprove the witness. The trial judge stated that it would be unfair to ask them to perform such a service. While the court has a precarious duty to not let the sideshow take over the circus, it is not required that the court deny any mention of overly aggressive officer bias. The County Court denied Mr. O'Neil any potentially meaningful consideration of the issue because it would not take any evidence on the matter at his suppression hearing.

IV.   THE COUNTY COURT ERRED WHEN IT FOUND THE DEFENDANT'S PROFFERED EVIDENCE TO PROVE THE ALLEGED BIAS OF THE PEOPLE'S KEY WITNESS, DEPUTY PLUTT, WAS INSUFFICIENT.

Credibility is always an issue in any litigated proceeding. Here, the trial judge ruled that the evidence proffered by counsel was too general and insufficient to establish a plan by Deputy Plutt. (v.1, p. 71). It making this

determination it simply stated the fact that the proposed witnesses were

either arrested, charged, and tried. (v. 1, p. 71).  It noted "no commonality"

aside from the fact that they all disagree with the actions of the deputy. (v. 1,

p. 71).  Mr. O'Neil submits that this is a serious understatement that these

individuals did not simply "disagree" with Deputy Plutt's action a few of

them challenged her actions in court and won.  The issue here is that the

County Court would not permit any testimony on these precise points.

The County Court went further to point out, "disagreement does not

prove anything." (v. 1, p.71).  Mr. O'Neil submits that he disagrees with the

People's prosecution of him; however, that is the basic tone of the

adversarial process.  That is an incorrect statement of his offer of proof in

this case.

At the suppression hearing the County Court stated that he wanted to

know the outcome of the case because he was being asked to pass on the

credibility of the officer.  He stated if he stopped six people for weaving and

all turned out to be sober then we may have a faulty vision problem.

However, when presented with substantially similar evidence he found "no

commonality."  The offer of proof was specific and articulated a clear basis

for allowing, at least, the presentation of such evidence.  On at least four

separate occasions in writing and orally Mr. O'Neil made the same offer of proof and was categorically denied.

## CONCLUSION

The County Court has effectively denied the right of a citizen to challenge the credibility of a law enforcement officer. While a court must safeguard against spurious claims, the right to due process and a fair trial must allow citizens from a small community the right to defend themselves from substantial claims of unjustified law enforcement conduct. If denied that right, law enforcement has an unfetter stamp of approval to conduct unchallengeable criminal investigations in any way they see fit. For the aforementioned reasons, Mr. O'Neil respectfully requests that this Court REVERSE the decision of the County Court Judges.

Respectfully Submitted,

____S// original signatures on file____
Todd Barson, 23529
Heather Beattie, 37417

CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of June, 2007, this OPENING BRIEF was e-filed via Lexis Nexis File and Serve and that the original was sent to the court and a copy was sent via U.S. postal service self addressed postage pre-paid to the following:

      Clerk of the County Court
      Park County Courthouse
      300 Fourth Street
      Fairplay, CO 80440

      Office of the District Attorney
      Eleventh Judicial District
      P.O. Box 1206
      Fairplay, CO 80440

Todd Barson

| | |
|---|---|
| COUNTY COURT, PARK COUNTY, COLORADO<br>Court Address:<br>300 Fourth Street / P.O. Box 190<br>Fairplay, Colorado 80440<br>(719) 836-2940 | |
| | FILED IN COMBINED COURT<br><br>JUN 29 2007<br><br>PARK COUNTY, COLORADO |
| **THE PEOPLE OF THE STATE OF COLORADO,**<br>**Appellee - Plaintiff,**<br><br>v.<br><br>**DENNIS O'NEIL,**<br>**Defendant - Appellant** | |
| | ▲  **COURT USE ONLY**  ▲ |
| Office of the District Attorney, 11th Judicial District<br>Martin J. Kenney, Deputy District Attorney<br>310 Fourth Street / P.O. Box 1206<br>Fairplay, Colorado 80440<br>Phone Number:   (719) 836-2080<br>FAX Number:   (719) 836-7093<br>Atty. Reg. #:      31396 | Case Number:<br>07CV107<br>Div.: A  Ctrm: County |
| **ANSWER BRIEF** | |

The People of the State of Colorado, by and through Molly Chilson, District Attorney within and for the Eleventh Judicial District, hereby submit their answer brief.

ARGUMENT

1.  The defendant, O'Neil, attempted to introduce evidence maligning Deputy J. Plutt's conduct as a peace officer. Such evidence is not permitted. *People v. Taylor*, 545 P.2d 703, 305 (Colo.1976); *People v. Cole*, 654 P.2d 830 (Colo.1982).

2.  The Court can and must limit testimony. A defendant's right to confront and cross-examine witnesses is not absolute and may be limited to accommodate legitimate interests in the criminal trial process. *Chambers v. Mississippi*, 410 U.S. 284 , 93 S.Ct. 1038 (1973); *Cole*, at 833.

3.  The Court correctly precluded the testimony in question. To routinely allow this sort of questioning could greatly delay the trial and in effect make the officer the defendant in a series of mini-trials dealing with the manner in which she arrested countless other persons. The officer would have the right to present witnesses to her side of the story. The sideshow would take over the circus. *Taylor*, at 706.



4.  Based upon the Colorado Rule of Evidence 404, the Court correctly denied the defendant's proposed testimony.  Character evidence is not admissible to show that a person acted in conformity therewith.

5.  Based upon the Colorado Rule of Evidence 608, the Court correctly denied the defendant's proposed testimony.  Extrinsic evidence may not be used to attack a witness' character for truthfulness.

6.  See People's Exhibit "A".

Dated this June 29th, 2007.

Respectfully submitted,
MOLLY CHILSON
DISTRICT ATTORNEY

Martin J. Kenney, Deputy District Attorney

CERTIFICATE OF SERVICE

I hereby certify that on June 29th, 2007, I have mailed a true copy of the foregoing motion by fax/U.S. Mail, postage prepaid, addressed to:

Todd Barson
PO BOX 5406
111 Ski Hill Road
Breckenridge, CO 80424

Monica Jones
District Attorney's Office

2



County Court, Park County Combined Court
300 4th Street, P. O. Box 190
Fairplay, CO 80440
719 / 836-2940

RECEIVED
FEB 2 0 2007
BY:

The People of the State of Colorado

v.

Dennis O'Neil,
Defendant

FILED IN COMBINED COURT
JUN 29 2007
PARK COUNTY, COLORADO

Case Number: 06 T 527

Div.: B        Ctrm: District

## FINDINGS AND ORDER

This case is before the court on defendant's Notice of Intent to Introduce Other Transactions (CRE 404b) (sic) filed January 8, 2007 and People's Motion *in Limine* to Preclude Defense Evidence of Arresting Officers Character or Conduct (sic) filed January 31, 2007. Defendant has filed, at the court's instruction, an Amended Notice of Intent to Introduce Other Transactions [CRE 404(b)]. The People have filed Notes in re: O'Neil matter. The court finds:

Defendant is charged with Drove Motor Vehicle Under the Influence of Alcohol, §42-4-1301(1)(a), C.R.S., and Failed to Drive in Single Lane (Weaving), §42-4-1007(1)(a), C.R.S. Defendant was arrested for the offenses on July 15, 2006 by Deputy Plutt of the Park County Sheriff's Office.

On December 27, 2006 the court (Judge Mayhew) conducted a hearing on defendant's motion to suppress evidence. Defendant contended that defendant was illegally stopped by Deputy Plutt. The court denied the motion and found that Deputy Plutt had reasonable suspicion to stop defendant for weaving. Judge Mayhew also denied defendant's oral motion to introduce evidence of other traffic contacts conducted by Deputy Plutt, which defendant contended impeached the deputy's credibility.

Defendant has listed 5 witnesses who would testify, according to the offer of proof, that in the witnesses' opinions Deputy Plutt stopped them when driving for no legally sufficient reason. Some would also testify that the reasons given by Deputy Plutt for the stops were false.

Defendant, when asked by the court at the hearing on February 5, 2007, stated that the only purpose to cross examine Deputy Plutt and to introduce testimony by other witnesses who had been contacted by her was to attack her credibility. The court

concludes that the proposed cross-examination and evidence is marginally relevant. Although technically admissible under the rules of evidence any probative value is outweighed by the likelihood that permitting this evidence will lead to a protracted trial on tangential issues.

The court understands defendant's argument is that evidence of other traffic stops which the witnesses will contend were without legal justification would tend to show that Deputy Plutt would be untruthful in her expected testimony that defendant was weaving, an indicia of intoxication. Defendant also contends that other acts evidence is admissible under CRE 404(b) to show Deputy Plutt had a plan.

CRE 608(b) states, in relevant part, that "[s]pecific instances of the conduct of a witness" may "in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness ... concerning his character for truthfulness or untruthfulness."

CRE 404 provides:
"(a) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
(1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same or if evidence of the alleged victim's character for aggressiveness or violence is offered by an accused and admitted under Rule 404(a)(2), evidence of the same trait of character of the accused offered by the prosecution;
(2) Character of alleged victim. Evidence of a pertinent trait of character of the alleged victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a homicide case to rebut evidence that the alleged victim was the first aggressor;
(3) Character of witness. Evidence of the character of a witness as provided in Rules 607, 608, and 13-90-101.
(b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The issues to be determined at trial are whether defendant was weaving and driving under the influence of alcohol. The issue for determination at the suppression hearing was whether there was reasonable suspicion to stop defendant. That has been resolved. The court has found, as a matter of law, that defendant's weaving constituted a legal basis for the stop. It is the law of the case. *People v. Matheny*, 46 P.3d 453 (Colo. 2002) ["Whether an officer has probable cause or reasonable suspicion to conduct a search or effect a seizure are mixed questions of law and fact with constitutional implications... .", citing *People v. King*, 16 P.3d 807 (Colo.2001)]. Therefore, defendant's

proposed evidence is of marginal relevance. While defendant may cross-examine Deputy Plutt on her observations of defendant throughout the contact, including those preceding the stop, defendant may not cross-examine Deputy Plutt regarding her contact with defendant's proposed witnesses, because reasonable suspicion for the stop is not the issue for trial. Likewise, defendant may not call witnesses to show that Deputy Plutt has stopped them allegedly without legal justification. Whatever relevance the other stops might have is outweighed by the distraction of the jury from the central issue, whether defendant was intoxicated. *People v. Taylor,* 190 Colo. 210, 545 P. 2d 703 (1976).

Construing defendant's offer of proof in the light most favorable to him, the court, at most, will have a he-said, she-said, which will be of little, if any, value to jurors. While working to determine if the charges against defendant are proven beyond a reasonable doubt, they will be faced with the distraction of determining whether these other incidents happened as the deputy said or as the witnesses will testify. It is unfair to ask the jurors to do so without conducting complete trials in those matters in which all available evidence would be considered. That procedure is simply beyond what is reasonable in this case. The court may, and must, limit cross examination and the presentation of extraneous evidence.

What defendant proposes would have the effect of maligning Deputy Plutt's official conduct generally by creating an impression that she initiates traffic stops willy nilly. This is impermissible. *People v. Cole,* 654 P.2d 830 (Colo.1982). This does not directly promote the inquiry of whether defendant was weaving or intoxicated. It would lead to a parade of witnesses and testimony of greater length than necessary on the issue of defendant's intoxication because the district attorney would presumably seek to call, as she would be entitled to do, at least an equal number of witnesses in rebuttal. If the court were to permit defendant's proposed cross examination and evidence, it would lead - if the court were to be consistent - to the situation in which in every trial a defendant could call every person who disagreed with the arresting officer to testify that the officer's stated reasons for contacting the witness were untrue. The district attorney would then be entitled to present evidence that the officer's contacts were lawful and the officer truthful. The result would be trials within trial on whether the deputy's version or the witness' version of their stop is true. It is for this reason that the appellate courts have stated the trial courts have discretion in admitting this evidence. *Id.*

As to the admissibility of the proposed evidence under CRE 404(b), the court finds that the offer of proof is insufficient. There is no commonality between the proposed evidence and that of this case on which the court can conclude that the evidence would show a plan on the part of Deputy Plutt. In one stop the proposed witness was arrested and charged and acquitted; in another the proposed witness was apparently arrested and charged but the case dismissed for procedural problems; in the last three the proposed witnesses were neither arrested nor charged. There is no commonality between the proposed evidence and defendant's case other than all the proposed witnesses and defendant apparently disagree with the actions of the deputy. Such evidence would not assist the jury in determining the issues in the case because mere disagreement does not prove anything.

Therefore, it is ordered:

People's Motion *in Limine* to Preclude Defense Evidence of Arresting Officers Character or Conduct is granted. Defendant may not cross examine Deputy Plutt at trial regarding traffic contacts with Kreg Kennedy, Garver Brown, Karen Mccubbin Lynch, Bonny Meade, or Debbie Davis nor introduce evidence of traffic contacts between them and Deputy Plutt.

Dated this 16th day of February, 2007.

BY THE COURT

PARK COUNTY
COLORADO
SEAL
COMBINED COURT

_____
Charles M. Barton
District Court Judge

cc:    Martin Kenney, Deputy District Attorney, P O Box 1206, Fairplay, CO 80440, via relay
       Todd Barson, P O Box 5586, Breckenridge, CO 80424, via mail and fax 970 547 1857

DISTRICT COURT OF PARK COUNTY,
THE STATE OF COLORADO

300 Fourth Street
Fairplay, CO  80440

Appeal from the County Court of Park County
Case No. 06T527
Presiding Court Judges:  Stanley Mayhew and
Charles Barton

**Appellant – Defendant:**
**DENNIS O'NEIL**

v.

**Appellee – Plaintiff:**
**THE PEOPLE OF THE STATE OF**
**COLORADO**

▲ **COURT USE ONLY** ▲

Attorney for Appellant - Defendant:
The Law Offices of Todd Barson, P.C.
Heather Beattie, A.R.N. 37417
P.O. Box 5406/111 Ski Hill Road
Breckenridge, CO  80424
Phone:  970-547-7668 or 970-389-6363
Fax: 970-547-1857
Email:  heather_beattie06@yahoo.com

**Case Number: 07CV107**

**REPLY BRIEF**



i

# TABLE OF CONTENTS

Table of Authority……………………………………………….. iii

Introduction………………………………………………… 1

Reply to People's Argument……………………………………2

Conclusion…………………………………………………….. 6

## TABLE OF AUTHORITY

Cases

People v. Cole, 654 P.2d 830 (Colo. 1982) ........................... 3

People v. Ibarra, 849 P.2d 33 (Colo. Ct. App. 1999).............. 2

People v. Taylor, 545 P.2d 703 (1976)....................... …... 3, 4

THE DEFENDANT, Dennis O'Neil, by and through his attorney, Todd Barson and the Law Offices of Todd Barson, P.C., submits the following REPLY BRIEF in the above-captioned case.

## INTRODUCTION

The Appellant/Defendant, Dennis O'Neil, will be referred to as "Mr. O'Neil." The Appellee/Plaintiff, The People of the State of Colorado will be referred to as "the People." In an effort to be concise and consistent counsel has designated the Clerk's Index in this matter by referring to items 1-48 as volume one (v. 1), the trial court record; item 49 as volume two (v. 2), Reporter's Transcript (Motion's Hearing) December 27, 2006; item 50 as volume three (v. 3), Reporter's Transcript (Motion's Hearing) February 12, 2007; and item 51 as volume four (v. 4), Reporter's Partial Transcript (Jury Trial) February 27, 2007. Thus, citations will reference the District Court's certified record by volume, page, and line number (v. p. 1.).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.   THE COUNTY COURT ERRED WHEN IT PREVENTED THE DEFENDANT FROM INQUIRING INTO THE ALLEGED BIAS OF THE PEOPLE'S KEY WITNESS, DEPUTY PLUTT, UNDER C.R.E. 404(b).

II.  THE COUNTY COURT ERRED WHEN IT PREVENTED THE DEFENDANT FROM INQUIRING INTO THE ALLEGED BIAS OF THE PEOPLE'S KEY WITNESS, DEPUTY PLUTT, UNDER

1

THE UNITED STATES CONSTITUTION AMENDMENT VI AND THE COLORADO CONSTITUTION ARTICLE II SECTION 16.

III.   THE COUNTY COURT ERRED WHEN IT DENIED DEFENDANT'S RIGHT TO A MEANINGFUL SUPPRESSION HEARING BY REFUSING TO CONSIDER EVIDENCE BEARING ON THE CREDIBILITY OF THE PEOPLE'S KEY WITNESS, DEPUTY PLUTT, UNDER THE UNITED STATES CONSTITUTION AMENDMENT IV AND XIV AND THE COLORADO CONSTITUTION ARTICLE II SECTION 7 AND 25.

IV.   THE COUNTY COURT ERRED WHEN IT FOUND THE DEFENDANT'S PROFFERED EVIDENCE TO PROVE THE ALLEGED BIAS OF THE PEOPLE'S KEY WITNESS, DEPUTY PLUTT, WAS INSUFFICIENT.

## STATEMENT OF THE CASE AND FACTS

Mr. O'Neil hereby incorporates the statement of facts from his Opening Brief in this case.

## REPLY TO THE PEOPLE'S ARGUMENT

Trial courts are afforded considerable discretion in determining evidentiary questions of admissibility. The standard of review for overturning the trial court on an evidentiary issue is for the appellant to show that the decision was manifestly arbitrary, unreasonable, or unfair. People v. Ibarra, 849 P.2d 33, 38 (Colo. Ct. App. 1999). The County Court heard all of the arguments on December 27, 2006 and February 12, 2007 and reviewed all of the pleadings in the matter.

Yet, the County Court erred when it found that proffered evidence by Mr. O'Neil against Deputy Plutt was inadmissible under Colorado Rule of Evidence 404(b), the Confrontation Clause of the 6th Amendment of the United States Constitution and the Right to a Fair Trial of the 4th and 14th Amendments of the United States Constitution. Mr. O'Neil provided to the County Court specific individuals who would testify to specific previous acts of Deputy Plutt which went to her plan of operation and overly aggressive bias to pull over individuals without legal justification during the time period in question.

The People submitted an "Answer Brief" in this case, although it was written in the form of a motion. The People's first argument is Mr. O'Neil attempted to introduce evidence maligning Deputy Plutt's conduct as a peace officer. (Ans. Br. at 1). For this proposition the People cited cases People v. Cole, 654 P.2d 830 (Colo. 1982) and People v. Taylor, 545 P.2d 703 (Colo. 1976). In Taylor the Court *allowed* the defense attorney to cross-examine the officer involved as to several arrests he made of other black individuals around the time of the arrest of the defendant. 545 P.2d at 705. The People objected, like they do here, stating that the issues were collateral and that this will confuse the jury. Id. This is not a case of the defendant

attempting to impugn an officer's character with little evidence and with little effect on the officer's credibility. Mr. O'Neil had proffered specific evidence that it presented to the court that went directly to Deputy Plutt's credibility. The correlative negative affect on her character as a peace officer is implicit in the accusation that she was manufacturing evidence.

Further, in <u>Taylor</u>, the People continued to object to the defense's questioning and the Court overruled the objections because the questions went to the officer's credibility. In this case, Mr. O'Neil is not alleging Deputy Plutt was racially biased. In effect, however, Mr. O'Neil argues Deputy Plutt was using her color of authority to pull over citizens without probable cause. Probable cause is a standard that protects citizens from arbitrary governmental intrusion into their private lives. Like the officer in <u>Taylor</u> arresting individuals based on the color of their skin, Deputy Plutt was arresting individuals on *less* than the color of their skin. Mr. O'Neil argued and reiterates his argument that Deputy Plutt manufactured evidence in an effort to pull over citizens of Park County, Colorado. This argument goes directly to the credibility of Deputy Plutt.

The People's second argument is that cross-examination must be limited to accommodate legitimate interests in the criminal trial process.

(Ans. Br. at 1). Truth and justice are both legitimate interests of the criminal trial process. Here, neither judge presiding in this matter even inquired of the proffered witnesses. Had either judge inquired into the merits of the proffered evidence in advance of trial they could have (and should have) then limited their testimony; however, any mention of any of the other arrests was specifically excluded in advance of trial.

The People's third argument is that allowing any testimony from any other arrestee would allow the sideshow to take over the circus. (Ans. Br. at 1). Allowing inquiry by defense counsel of Deputy Plutt as to specific other arrests conducted in a strangely similar fashion to Mr. O'Neil's does not allow the sideshow to take over if the fettering out of irrelevant information is done in advance and testimony is properly limited. There are and were public records on the dispositions in the proffered cases. This is not an attempt to make the Deputy the defendant, the Deputy is an agent of the state and held, as such, to certain constitutional standards to protect citizens.

Mr. O'Neil argues that Deputy Plutt was engaged in a pattern of conduct of pulling over individuals with less than probable cause. This is an exception to the Colorado Rule of Evidence 404 ban against introduction of character evidence to prove conformity with the previous acts of the witness.

Finally, Mr. O'Neil has not argued the applicability of C.R.E. 608 to his case. Character for truthfulness is included in the definition of credibility; however, the crucial distinction is that integrity, sincerity, and reliability are also included in the definition of credibility. Therefore, C.R.E. 608 applies, but not directly because the Mr. O'Neil's concern is Deputy Plutt's credibility.

The County Court did not investigate the merits of Mr. O'Neil's proffered evidence. It simply dismissed the evidence as "marginally relevant...Although technically admissible." (v. 1, p. 70). This statement, in effect, limited Mr. O'Neil's right to present a defense.

CONCLUSION

For the aforementioned reasons, Mr. O'Neil respectfully requests that this Court REVERSE the decision of the County Court Judges.

Respectfully Submitted,

_____

Todd Barson, 23529

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of June, 2007, this OPENING BRIEF was e-filed via Lexis Nexis File and Serve and that the original was sent to the court and a copy was sent via U.S. postal service self addressed postage pre-paid to the following:

Clerk of the County Court
Park County Courthouse
300 Fourth Street
Fairplay, CO 80440

Office of the District Attorney
Eleventh Judicial District          _____
P.O. Box 1206                        Todd Barson
Fairplay, CO 80440

DISTRICT COURT. COUNTY OF PARK,
STATE OF COLORADO
PO BOX 190, 300 4TH ST., FAIRPLAY, CO 80440
(719)836-2940

---

Appeal from the Park County Court 06 T 527
Honorable Stanley Mayhew

---

Dennis O'Neil,

Appellant/Defendant

v.

The People of the State of Colorado

Appellee/Plaintiff

Δ COURT USE ONLY Δ

Case Number: 07 CV 107

---

## RULING ON APPEAL TO THE DISTRICT COURT

This case comes before the District Court for the 11th Judicial District on an appeal by the Appellant Dennis O'Neil stemming from findings and rulings made in connection with his Park County Court case.

On July 15, 2006, Mr. O'Neil was stopped by Park County Deputy Jennifer Plutt and subsequently charged with violations of C.R.S. 42-4-1301(1)(a) Drove Motor Vehicle Under the Influence of Alcohol, and C.R.S. 42-4-1007(1)(a) Failed to Drive in Single Lane ("Weaving").

On December 27, 2006 Park County Court Judge Stanley Mayhew conducted a hearing on Mr. O'Neil's motion to suppress evidence. Judge Mayhew denied the motion and found that the deputy had reasonable suspicion to stop Mr. O'Neil for weaving. The Court also denied Mr. O'Neil's oral motion to introduce evidence based on testimony of five individuals that would testify that they believed they had been wrongly stopped on other occasions by the same deputy.

On February 12, 2007 District Court Judge Charles Barton conducted a hearing on Mr. O'Neil's Notice of Intent to Introduce Other Transactions (under C.R.E. Rule 404b) filed on January 8, 2007 and the People's Motion *in Limine* to Preclude Defense Evidence of Arresting Officers Character or Conduct filed on January 31, 2007. On February 16, 2007 Judge Barton

1



EXHIBIT
P

issued his Findings and Order on the issues raised by both parties.

On February 27, 2007, the case was tried before a jury. The jury found Mr. O'Neil guilty on two counts: (1) driving while impaired (lesser offense) and (2) weaving.

In this appeal of the County Court rulings and ultimate jury verdict, Mr. O'Neil again challenges the Court's refusal to allow the testimony of the five individuals that would testify they believed Deputy Plutt had wrongly stopped them on other occasions; and the refusal to allow Mr. O'Neil's counsel to cross exam Deputy Plutt about those five other traffic stops. Mr. O'Neil argues that (1) the County Court erred in its application of C.R.E. Rule 404b; (2) the court erred by disallowing inquiry about the other traffic stops, which arguably would show the deputy's bias, in violation of his rights under the 6th Amendment to the U.S. Constitution and Article II, Section 16 of the Colorado Constitution; (3) the court erred by failing to suppress the evidence from the traffic stop (basically, on the same grounds) violated Mr. O'Neil's rights under the 4th and 14th Amendment of the U.S. Constitution and Article II, Sections 7 and 25 of the Colorado Constitution; and (4) again, the court erred by disallowing the same evidence/cross examination, which arguably would have shown the bias of the deputy.

This Court disagrees with Mr. O'Neil's contentions.

This Court concurs with the Findings and Order of Judge Barton dated February 16, 2007 (copy attached) and incorporates those findings and ruling herein. That Order thoroughly examined the evidence and arguments raised then (and again in this appeal) pertaining to the proffered testimony concerning five other alleged wrongful traffic stops by Deputy Plutt; applied C.R.E. Rule 404b to the arguments; and addressed the bias argument. Again, this Court concurs.

Mere allegations of prior wrongful traffic stops does not equate to 'prior similar acts.' Both Judge Barton and Judge Mayhew properly exercised the discretion and balancing of conflicting considerations entrusted to the trial court under the law. The record contains no evidence, and Mr. O'Neil's briefs fail to point to any evidence, that the trial court's decisions were manifestly arbitrary, unreasonable, or unfair. Absent such a showing, the trial court's evidentiary rulings must stand. *People v. Ibarra*, 849 P.2d 33, 38 (Colo. App. 1999).

Similarly, this Court concurs that the trial court's analysis of the so-called bias issue raised by Mr. O'Neil. His argument relies heavily on *People V. Taylor*, 190 Colo. 210, 545 P.2d 703 (1976). However, the *Taylor* case dealt with wrongful traffic stops based on the suspects' race. Evidence that a deputy is biased based on his/her tendency to stop drivers because of their race does not come close to evidence that a deputy is biased because he/she tends to stop weaving vehicles as suspected drunk drivers.

Therefore, the rulings of the trial court and subsequent jury verdict and judgment entered thereon, is affirmed.

2

Dated this 14th day of September 2007.

PARK COUNTY
COLORADO
SEAL
COMBINED COURT

BY THE COURT

Stephen A. Groome
District Court Judge

Copy to: Martin Kenney, Deputy District Attorney, P.O. Box 1206, Fairplay, CO 80440, via relay.

Todd Barson, Esq., P.O. Box 5586, Breckenridge, CO 80424, via mail and fax 970-547-1857

3

| SUPREME COURT, STATE OF COLORADO<br>TWO EAST 14TH AVENUE<br>DENVER, COLORADO 80203<br><br>CERTIORARI TO THE DISTRICT COURT,<br>PARK COUNTY, 07CV107<br>COUNTY COURT, PARK COUNTY, 06T0527 | CASE NO. 07SC883 |
|---|---|

**Petitioner:**

DENNIS O'NEIL,

v.

**Respondent:**

THE PEOPLE OF THE STATE OF COLORADO.

---

### ORDER OF COURT

Upon consideration of the Petition for Writ of Certiorari to the District Court of Park County, and after review of the record, briefs, and the judgment of said district court,

IT IS THIS DAY ORDERED that said Petition for Writ of Certiorari shall be, and the same hereby is, DENIED.

BY THE COURT, EN BANC, DECEMBER 31, 2007.

Copies mailed via the State's Mail Services Division on 12/31/07. MLK

Todd Barson
Heather K. Beattie
The Law Offices of Todd Barson
P.O. Box 5406
Breckenridge, CO  80424

Martin Kenney
Deputy District Attorney
P.O. Box 1206
Fairplay, CO  80440

Clerk of the Court
Park County Courthouse
PO Box 190
Fairplay, CO  80440

Honorable Steven Groome
Park County Courthouse
PO Box 190
Fairplay, CO  80440

Honorable Charles M. Barton
Park County Courthouse
PO Box 190
Fairplay, CO  80440


EXHIBIT
F



| | |
|---|---|
| **SUPREME COURT, STATE OF COLORADO**<br>Two East 14th Avenue<br>Denver, CO 80202<br><br>―――――――――――――――――<br>Appeal from the District Court of Park County<br>Case No. 07CV107<br><br>Presiding Court Judge: Steven Groome | |
| Appellant/Defendant: **DENNIS O'NEIL**<br><br>v.<br><br>Appellee/Plaintiff: **THE PEOPLE OF THE STATE OF COLORADO**<br><br>―――――――――――――――――<br>Attorney:<br>The Law Offices of Todd Barson, P.C.<br>Todd Barson, 23529<br>Heather K. Beattie, 37417<br>P.O. Box 5406/111 Ski Hill Road<br>Breckenridge, CO 80424<br>Phone: 970-547-7668<br>Fax: 970-547-1857 | ▲ COURT USE ONLY ▲<br><br>**Supreme Court Case Number:**<br><br>07 SC 883<br><br> |

## PETITION FOR WRIT OF CERTIORARI TO THE COLORADO SUPREME COURT

THE DEFENDANT, Dennis O'Neil, by and through his attorney Todd

Barson and the Law Offices of Todd Barson, P.C. and submits the following

PETITION in the above captioned case.

### INTRODUCTION

The Defendant/Appellant, Dennis O'Neil, will be referred to as "Mr.

O'Neil." The Appellee/Plaintiff, The People of the State of Colorado will be

referred to as "the People." To be concise and consistent counsel has

designated the Clerk's Index in this matter by referring to items one through 48

as volume one (v. 1), the trial court record; item 49 as volume two (v. 2),

Reporter's Transcript (Motion's Hearing) December 27, 2006; item 50 as

volume three (v.3), Reporter's Transcript (Motion's Hearing) February 12,

2007; and item 51 as volume four (v. 4), Reporter's Partial Transcript (Jury

Trial) February 27, 2007.  Thus, citation will reference the District Court's

certified record by volume, page, and line number (v. p. l.).

### STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

THE DISTRICT COURT VIOLATED THE DEFENDANT'S
RIGHT TO CONFRONT HIS ACCUSER BY REFUSING TO
APPLY PEOPLE V. TAYLOR, 545 P.2d 703 (Colo. 1976), WHICH
HOLDS THE DEFENDANT SHOULD BE ALLOWED TO
QUESTION THE CHARACTER OF A WITNESS FOR TRUTH
AND VERACITY.

### CONSIDERATIONS FOR GRANTING CERTIORARI

The District Court decided "a question of substance not heretofore

determined by [the Supreme Court]." C.A.R. 49(a)(1).  The district court's

decision denies the Defendant the right to confront witnesses against him

when it affirmed the county court's order barring any mention of prior

incidents of bad conduct of Deputy Plutt without hearing from any witnesses

in violation of this Court's holding in People v. Taylor, 545 P.2d 703 (Colo.

1976).  Further, this issue is crucial to the Defendant's ability to surmount a

defense as it directly relates to the cross examination of key prosecution

witnesses.

This Court may grant certiorari only for special and important reasons. C.A.R. 49(a). The Defendant submits that the county court's review of this case allowed law enforcement officers unquestionable protection from scrutiny.

There is no question the right to confront adverse witnesses is a fundamental component of the accused trial rights. However, the justice system simply acquiesces to improper police behavior when it refuses to review testimony against law enforcement.

## JURISDICTION

This Court has jurisdiction under C.R.S. 13-6-301(4). The District Court issued its Ruling on Appeal to the District Court on September 14, 2007. Counsel has attached a copy of this Ruling.

## STATEMENT OF THE CASE AND BRIEF OUTLINE OF THE FACTS

Mr. O'Neil has been convicted of Driving While Ability Impaired. Mr. O'Neil and his passenger, Craig Lamonaca, were pulled over by Park County Sheriff's Deputy Plutt on July 14, 2006. (v. 4, p. 12, l. 22-25).

On September 18, 2006 M. O'Neil filed a Motion to Suppress based on the unconstitutional stopping of his vehicle without reasonable suspicion or probable cause. (v. 1, p. 101). Mr. O'Neil then filed a notice of witness to include: Garver Brown, Karen McCubbin Linch, Kreg Kennedy, Jeff Hill, Bonnie Meade, Gary Stamper, Jessie Hatfied, and Greg Lamonaca. (v. 1, p. 90).

3

A hearing was held on the motion on December 27, 2006 (v. 2). Mr. O'Neil argued for the suppression of evidence based on no reasonable suspicion by Deputy Plutt that he was failing to drive in his own lane on July 15, 2006 around 12:55 a.m. (v. 2, p. 3, l. 2-7). It is a factual issue whether Mr. O'Neil in fact weaved at the date and time above; however, Mr. O'Neil maintains he did not weave. (v. 2, p. 41, l. 6-9). Mr. O'Neil offered proof to the court that he has at least five other individuals pulled over for similar reasons at similar hours of the night within the same general time frame as Mr. O'Neil by the same Deputy Plutt with proof that each incident that it was without legal justification. (v. 2, p. 59, l. 6-24; p. 60, l. 1-12).

The County Court felt this type of criminal suppression, evidentiary issue was not his suit, the judge allowed counsel to file supporting briefs. (v. 2, p. 6, l. 15-18). Mr. O'Neil filed a Notice of Intent to Introduce Other Transactions (CRE 404(b)). (v. 1, p. 88-89). In Mr. O'Neil's Notice contained the same witnesses as listed above. (v. 1 p. 88). The People filed a motion in response arguing under C.R.E. 608(b) this evidence could not be introduced because it was extrinsic and went to the deputy's character for truthfulness. (v.1, p. 83-84).

Another motion's hearing was held on February 12, 2007. (v. 3). At that time Mr. O'Neil again argued to introduce evidence of similar transactions of the witness under C.R.E. 404(b). (v. 3, p. 10, l. 18-22). At that time the County

4

Court struggled with understanding what character trait the other acts evidence would show. (v. 3, p. 22, l. 4-20). In the end, it again reserved ruling and allowed counsel to file supporting briefs. (v. 3, p. 25, l. 1-14).

Mr. O'Neil filed an Amended Notice providing the same list of witnesses with specific details about the individual, the time of day they were stopped, the date on which they were stopped, and dispositions in those cases. ( v. 1, p. 74-76). Specifically, in at least two of those cases the individuals were pulled over by Deputy Plutt at night for weaving all over the road and almost hitting a delineator post (v. 1, p. 75). Further, the other individuals were pulled over at night for reasons they found to be inaccurate and in one case the individual was told by Deputy Plutt that the she was pulling her over to investigate her sobriety because the car was involved in a DUI the previous night. (v. 1, p. 75).

The County Court issued its Findings and Order on February 16, 2007. (v. 1, p. 72). In its Findings the County Court concluded that the proffered evidence was "marginally relevant." (v. 1, p. 70). The County Court used the circular argument that it had already decided there was probable cause/reasonable suspicion for the stop in an earlier hearing. (v. 1, p. 70). Further, the County Court found that "whatever relevance the other stops might have is outweighed by the distraction of the jury from the central issue,

whether the defendant was intoxicated." (v. 1, p. 71).  For that proposition the

County Court cited People v. Taylor, 545 P.2d 703.

Further, the County Court believed that the proffered witnesses simply

disagreed with the deputy. (v. 1, p. 71).  It noted, "disagreement does not prove

anything." (v. 1, p. 71).  The District Court adopted those findings and

dismissed the Defendant's argument based on Taylor finding that it did not

apply because that case dealt with racial bias.  (see attached).

## ARGUMENT

THE DISTRICT COURT VIOLATED THE DEFENDANT'S RIGHT TO
CONFRONT HIS ACCUSER BY REFUSING TO APPLY PEOPLE V.
TAYLOR, 545 P.2d 703 (Colo. 1976), WHICH HOLDS THE DEFENDANT
SHOULD BE ALLOWED TO QUESTION THE CHARACTER OF A
WITNESS FOR TRUTH AND VERACITY.

## STANDARD OF REVIEW-STRICT SCRUTINY

The Colorado Constitution expressly establishes the inalienable right to

defend one's liberty.  Colo. Const. art. II, section 3.  The right to liberty, the

presumption of innocence, and right to confront one's accuser are

fundamental.  U.S. Const. amends. V, VI, & XIV; Colo. Const. art. II, sections

3 and 25.  Therefore, strict scrutiny applies.

## THE SIXTH AMENDMENT ARGUMENT

In People v. Taylor this Court considered the bounds of cross

examination of a police officer's racial bias.  545 P.2d 703, 705 (Colo. 1976).

The Defendant inquired into the officer's racial bias by questioning him as to

6

specific arrests of African-Americans he had made within months of the

Defendant's arrest. 545 P.2d at 705. The officer disavowed even the slightest

hint that any prior arrests were racially motivated. Id. In rebuttal, the

Defendant was allowed to bring in the witnesses who were arrested they testified

to racial slurs made by the officer. Id. This Court concluded the trial court had

been correct to allow the evidence because it went to the officer's credibility.

Id.

However, this Court was careful to provide that while the evidence

should be allowed within broad limits courts should not allow such

examination when it would be irrelevant, have no probative force, or if the

evidence would have little effect on the witness's credibility. 545 P.2d at 705.

This Court did not allow carte blanche the admission of such evidence; it

provided, "while the character of a witness for truth and veracity may be

shown, impeachment may not be accomplished by attacking the general

character of a witness." Id. at 706.

Here, the County Court refused any presentation of Mr. O'Neil's

proffered evidence. Like Taylor, counsel for the Defendant asked Deputy Plutt

on cross if she had ever pulled anybody over without probable cause to which

she responded, "never." (v. 4, p. 53, l. 11-13). Mr. O'Neil should have been

allowed to introduce extrinsic evidence to the contrary. First, Mr. O'Neil was

not permitted to inquire of the Deputy whether the arrests had taken place,

7

even though that was considered proper questioning under Taylor. Second, Mr. O'Neil was likewise precluded from calling witnesses who would have testified they were pulled over without any justification. Third, the County Court should have at least considered pre-trial questioning of Deputy Plutt as to this issue due to the effect it would have on her credibility if it were introduced at trial.

The District Court adopted the findings of the County Court. The District Court provides that counsel pointed to no evidence that the County Court's ruling was manifestly arbitrary, unreasonable, or unfair. Yet, the Defendant argued that while that trial court has broad discretion to permit or deny cross examination of certain topics it does not have the right to deny defendants the right to confront their accuser. It was manifestly unjust, unfair, and unreasonable to deny Mr. O'Neil even the opportunity to bring in these witnesses in an evidentiary matter, in addition to being denied the right to question Deputy Plutt in any way about previous arrests she had made. The County Court effectively denied Mr. O'Neil his right to surmount his own defense by preventing any questioning of Deputy Plutt about her pattern of conduct.

## CONCLUSION

For the aforementioned reasons Mr. O'Neil respectfully requests this

Court GRANT his Petition for Certiorari.

Dated this 14th day of October 2007.

Respectfully Submitted:

Todd Barson, Esq.
Heather K. Beattie, Esq.
The Law Offices of Todd Barson, P.C.
P.O. Box 5406
Breckenridge, CO  80424

9

## CERTIFICATE OF SERVICE

I hereby certify that on the ___14___day of ____October_____,
2007, the original and nine copies of the above **PETITION FOR WRIT OF
CERTIORARI TO THE COLORADO SUPREME COURT** was hand
delivered and filed with:

Clerk of the Supreme Court
Two East 14th Avenue
Denver, CO  80202

Heather Beattie