Exhibit A: Opening Brief in <u>People v. O'Neil</u>, No. 07CV107.

| | |
|---|---|
| DISTRICT COURT OF PARK COUNTY, THE STATE OF COLORADO<br><br>300 Fourth Street<br>Denver, CO 80440 | |
| Appeal from the County Court of Park County<br>Case No. 06T527<br>Presiding Court Judges: Stanley Mayhew and Charles Barton | |
| **Appellant – Defendant:**<br>**DENNIS O'NEIL**<br><br><br>**v.**<br><br><br><br>**Appellee – Plaintiff:**<br>**THE PEOPLE OF THE STATE OF COLORADO** | **▲ COURT USE ONLY ▲** |
| Attorney for Appellant - Defendant:<br>The Law Offices of Todd Barson, P.C.<br>Heather Beattie, A.R.N. 37417<br>P.O. Box 5406/111 Ski Hill Road<br>Breckenridge, CO 80424<br>Phone: 970-547-7668 or 970-389-6363<br>Fax: 970-547-1857<br>Email:  heather_beattie06@yahoo.com | **Case Number: 07CV107** |
| **OPENING BRIEF** | |

SEP 0   2008

## TABLE OF CONTENTS

Table of Authority……………………………………….. iv

Introduction…………………………………………… 1

Statement of Issues Presented for Review………………….. 1, 2

Statement of the Case and Facts…………………………  2

Summary of the Argument…………………………….  12

Argument…………………………………………  13

I.      THE COUNTY COURT ERRED WHEN IT PREVENTED
        THE DEFENDANT FROM INQUIRING INTO THE
        ALLEGED BIAS OF THE PEOPLE'S KEY WITNESS,
        DEPUTY PLUTT, UNDER C.R.E.
        404(b)………………………………………………13

II.     THE COUNTY COURT ERRED WHEN IT PREVENTED
        THE DEFENDANT FROM INQUIRING INTO THE
        ALLEGED BIAS OF THE PEOPLE'S KEY WITNESS,
        DEPUTY PLUTT, UNDER THE UNITED STATES
        CONSTITUTION AMENDMENT VI AND THE
        COLORADO CONSTITUTION ARTICLE II SECTION
        16……………………………………………….. 17

III.    THE COUNTY COURT ERRED WHEN IT DENIED
        DEFENDANT'S RIGHT TO A MEANINGFUL
        SUPPRESSION HEARING BY REFUSING TO CONSIDER
        EVIDENCE BEARING ON THE CREDIBILITY OF THE
        PEOPLE'S KEY WITNESS, DEPUTY PLUTT, UNDER THE
        UNITED STATES CONSTITUTION AMENDMENT IV AND
        XIV AND THE COLORADO CONSTITUTION ARTICLE II
        SECTION 7 AND 25……………………………………...  19

IV.     THE COUNTY COURT ERRED WHEN IT FOUND THE
        DEFENDANT'S PROFFERED EVIDENCE TO PROVE THE
        ALLEGED BIAS OF THE PEOPLE'S KEY WITNESS,
        DEPUTY PLUTT, WAS INSUFFICIENT………………… 21

Conclusion…………………………………………………….. 22

# TABLE OF AUTHORITY

## Cases

<u>Kogan v. People</u>, 756 P.2d 945 (Colo. 1988) …………………...   17

<u>People v. Adler</u>, 629 P.2d 569 (Colo. 1981)………………….....19, 20

<u>People v. Ibarra</u>, 849 P.2d 33 (Colo. Ct. App. 1999)…………   12

<u>People v. Spoto</u>, 795 P.2d 1314 (Colo. 1990)…………………..  13, 14

<u>People v. Taylor</u>, 545 P.2d 703 (1976)…………………... …...  11, 17


## Statutes

C.R.E. 404(b)……………………………………………  9, 12, 13

C.R.E. 608(b)……………………………………………  9, 13

THE DEFENDANT, Dennis O'Neil, by and through his attorney,

Todd Barson and the Law Offices of Todd Barson, P.C., submits the

following OPENING BRIEF in the above-captioned case.

## INTRODUCTION

The Appellant/Defendant, Dennis O'Neil, will be referred to as "Mr.

O'Neil." The Appellee/Plaintiff, The People of the State of Colorado will be

referred to as "the People." In an effort to be concise and consistent counsel

has designated the Clerk's Index in this matter by referring to items 1-48 as

volume one (v. 1), the trial court record; item 49 as volume two (v. 2),

Reporter's Transcript (Motion's Hearing) December 27, 2006; item 50 as

volume three (v. 3), Reporter's Transcript (Motion's Hearing) February 12,

2007; and item 51 as volume four (v. 4), Reporter's Partial Transcript (Jury

Trial) February 27, 2007. Thus, citations will reference the District Court's

certified record by volume, page, and line number (v. p. l.).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

I.    THE COUNTY COURT ERRED WHEN IT PREVENTED THE
      DEFENDANT FROM INQUIRING INTO THE ALLEGED BIAS
      OF THE PEOPLE'S KEY WITNESS, DEPUTY PLUTT, UNDER
      C.R.E. 404(b).

II.   THE COUNTY COURT ERRED WHEN IT PREVENTED THE
      DEFENDANT FROM INQUIRING INTO THE ALLEGED BIAS
      OF THE PEOPLE'S KEY WITNESS, DEPUTY PLUTT, UNDER

THE UNITED STATES CONSTITUTION AMENDMENT VI AND THE COLORADO CONSTITUTION ARTICLE II SECTION 16.

III.   THE COUNTY COURT ERRED WHEN IT DENIED DEFENDANT'S RIGHT TO A MEANINGFUL SUPPRESSION HEARING BY REFUSING TO CONSIDER EVIDENCE BEARING ON THE CREDIBILITY OF THE PEOPLE'S KEY WITNESS, DEPUTY PLUTT, UNDER THE UNITED STATES CONSTITUTION AMENDMENT IV AND XIV AND THE COLORADO CONSTITUTION ARTICLE II SECTION 7 AND 25.

IV.   THE COUNTY COURT ERRED WHEN IT FOUND THE DEFENDANT'S PROFFERED EVIDENCE TO PROVE THE ALLEGED BIAS OF THE PEOPLE'S KEY WITNESS, DEPUTY PLUTT, WAS INSUFFICIENT.

## STATEMENT OF THE CASE AND FACTS

Mr. O'Neil is a registered land surveyor at Baseline Surveys in Breckenridge, Colorado.  (v. 4, p. 88, l. 19-22); (v. 1, p. 115).  He is a long time resident of Fairplay.  (v. 4, p. 128, l. 18-25).  On July 14, 2006 Mr. O'Neil went to a dinner party for a friend at Alma's Only Bar. (v. 4, p. 88, l. 24-25); (p. 89, l. 2-4); (p. 90, l. 8-9).  He arrived around 6:15 p.m. (v. 4, p. 90, l. 10-11).  Throughout the evening he had a total of three regular-size (highball glasses) of whiskey and coke. (v. 4, p. 90, l. 22-24); (p. 91, l. 1-3); (p. 95, l. 2-6).  Mr. O'Neil paid his tab at 11:19 p.m.  (v.1, p. 47); (v. 4, p. 95, l. 24-25).

Mr. O'Neil and his friend, Craig Lamonaca, left the bar at 12:50 a.m. on July 15, 2006. (v. 4, p. 97, l. 1-5). They headed in a Southerly direction on Highway 9 towards Fairplay. (v. 4, p. 98, l. 7-9). Mr. O'Neil testified at trial and the motion's hearing that when he began nearing Fairplay he noted police lights in the distance in his rearview mirror. (v. 4, p. 98, l. 21-25); (p. 99, l. 1-7); (v. 2, p. 39, l. 22-25).

Mr. Lamonaca asked Mr. O'Neil why they were being pulled over and Mr. O'Neil responded that he had no idea. (v. 4, p. 100, l. 7-12). When the police lights approached Mr. O'Neil's vehicle he pulled over, in town instead of the shoulder of the highway. (v. 4, p. 100, l. 16-18); (p. 101, l. 1-3). Mr. O'Neil and Mr. Lamonaca testified that they did not pass a vehicle on Highway 9 their entire ride. (v. 2, p. 37, l. 19-24); (v. 4, p. 99, l. 17-22); (v. 4. p. 116, l. 20-22). In fact, Mr. O'Neil stated he would have remembered another vehicle because "it would have been bright lights right in my eyes." (v. 2, p. 38, l. 4-13). Further, as both parties state there was no other traffic on the highway or in the town of Fairplay at that hour. (v. 4, p. 37, l. 21-23); (v. 4, p. 101, l. 7-12); (v. 4, p. 34, l. 24-25); (p. 35, l. 1).

Deputy Plutt is the grant writer for the Law Enforcement Assistance Fund (LEAF) for Park County. (v. 4, p. 29, l. 13). She is also the number

one DUI arresting deputy in Park County. (v. 4, p. 29, l. 1-10).  The LEAF

grant is given to agencies to pay their deputies overtime for specific holidays

throughout the year; however, the agency is supposed to increase their DUI

arrests by ten to 15 percent. (v. 4, p. 31, l. 11-14); (v. 4, p. 30, l. 20-21).

Deputy Plutt, the arresting officer, testified that she was Northbound

on Highway 9 when she noticed the car coming toward her was over the

yellow center line, actually in her lane, and that she had to swerve onto the

shoulder of the road to avoid a collision. (v. 2, p. 17, l. 8-14); (v. 4, p. 13, l.

2-4).  However, Deputy Plutt was impeached by counsel on that subtle, but

crucial point. (v. 4, p. 34, l. 1-14).  Deputy Plutt testified that, "[a]s I saw the

vehicle coming toward me, I saw that it was somewhat in my lane." (v. 4, p.

13, l. 10-11).  When challenged as to whether Mr. O'Neil was on or over the

yellow line she again testified, "over – I have stated over." (v. 4, p.33, l. 11).

However, after refreshing her memory by looking at her Express Consent

Affidavit (v. 1, p. 115) and her narrative report Deputy Plutt admitted Mr.

O'Neil was "on" not over the yellow center line as her reports had

previously indicated, not as she had testified.  (v. 4, p. 34, l. 9).

Deputy Plutt testified that she made a U-turn to follow Mr. O'Neil at which point she noticed his vehicle cross the center line again twice and then go off the road and jerk back onto the highway. (v. 2, p. 17, l. 15-18).

Deputy Plutt pulled over Mr. O'Neil at 12:55 a.m. (v. 4, p. 12, l. 22-25); (v. 4, p. 20, l. 21-24). She requested his license, registration, and proof of insurance. (v. 4, p. 19, l. 16-17).  She ran his information through dispatch and then returned to Mr. O'Neil's vehicle. (v. 4, p. 38, l. 19-25). Deputy Plutt told Mr. O'Neil he smelled like alcohol and asked whether he had been drinking. (v. 2, p. 23, l. 17-18). Mr. O'Neil sarcastically remarked, "probably too much." (v. 4, p. 37, l. 15-17).   Deputy Plutt then asked Mr. O'Neil if he would perform voluntary roadside maneuvers (V.R.M.), which Mr. O'Neil politely declined. (v. 2, p. 23, l. 23-25).   The reason Mr. O'Neil declined was because he has two bad knees and believed this would affect any V.R.M.'s. (v. 4, p. 104, l. 1-7).  Although, Deputy Plutt never asked Mr. O'Neil if there was a medical reason for not performing V.R.M.'s. (v. 4, p. 104, l. 8-10).

Deputy Plutt testified that Mr. O'Neil fumbled for his license and registration. (v. 4, p. 19, l. 18-20).  That he had a flushed face and bloodshot, watery eyes, (v. 4, p. 19, l. 23-24) and a strong odor of an alcoholic beverage

coming from his mouth.  (v. 2, p. 23, l. 1-2); (l. 8-9); (l. 16-17).  Deputy Plutt also testified that Mr. O'Neil used the vehicle door for support. (v. 4, p. 21, l. 17-18). Further, she provided that Mr. O'Neil staggered back to the back of his vehicle where she had directed him to go. (v. 4, p. 22, l. 15-16).

Deputy Reynolds was Deputy Plutt's back up officer.  (v. 4, p. 63, l. 22-23).  He testified that he "did notice the smell of alcohol coming from his person." (v. 4, p. 63, l. 24-25); (p. 64, l. 1).  Deputy Reynolds could not, however, corroborate any additional signs of indicia of intoxication of Mr. O'Neil.  (v. 4, p. 68, l. 3-11).  Further, Deputy Carrigan, the deputy who checked Mr. O'Neil into the Park County Jail that night, testified that Mr. O'Neil smelled like alcohol and was flushed with bloodshot watery eyes.  (v. 4, p. 71, l. 13-21).  However, Deputy Carrigan could not corroborate that Mr. O'Neil was staggering, using the desk or the deputy for support while walking, that he had any slurred speech, or that he was disoriented or confused. (v. 4, p. 74, l. 9-21).

As Mr. O'Neil was being pulled over by Deputy Plutt he was already wondering why he was being stopped.  (v. 4, p. 100, l. 13-15).   Mr. O'Neil asked Deputy Plutt why he was being pulled over and she responded, "you almost hit that delineator post." (v. 2, p. 40, l. 15-18).  Mr. O'Neil testified

that he believe that statement to be totally inaccurate. (v. 2, p. 40, l. 22-24).
Mr. O'Neil then became distrustful of this deputy and decided he would not
cooperate. (v. 4, p. 105, l. 5-16).

On September 18, 2006 Mr. O'Neil filed a Motion to Suppress based
on the unconstitutional stopping of his vehicle without reasonable suspicion
or probable cause. (v. 1, p. 101). Mr. O'Neil then filed a notice of witnesses
to include: Garver Brown, Karen McCubbin Linch, Kreg Kennedy, Jeff Hill,
Bonnie Meade, Gary Stamper, Jessie Hatfield, and Greg Lamonaca. (v. 1, p.
90).

A hearing was held on the motion on December 27, 2006. (v. 2). Mr.
O'Neil argued for the suppression of evidence base on no reasonable
suspicion by Deputy Plutt that he was failing to drive in his own lane on July
15, 2006 around 12:55 a.m. (v. 2, p. 3, l. 2-7). It is a factual issue whether
Mr. O'Neil weaved at the date and time above; however, Mr. O'Neil
maintains he did not weave. (v. 2, p. 41, l. 6-9). Mr. O'Neil offered proof to
the court that he has at least five other individuals pulled over for similar
reasons at similar hours of the night within the same general time frame as
Mr. O'Neil by the same Deputy Plutt with proof that it was without legal
justification. (v. 2, p. 59, l. 6-24; p. 60, l. 1-12).

Mr. O'Neil maintains Deputy Plutt exaggerated the truth in an effort to pull him over. (v. 2, p. 3, l. 16-20).  The County Court found, however, Deputy Plutt credible and probable cause for the stop established, "Defendant's vehicle was traveling in an erratic manner and crossed the center line on and off the roadway twice on the – paved portion of the road way two times, that the officer had to take evasive action to avoid this vehicle when it did cross the center line." (v. 2, p. 65, l. 8-14).

At the same motion's hearing Mr. O'Neil objected to the testimony of Deputy Plutt beyond just that portion of the stop that was in issue.  (v. 2, p. 19, l. 15-16).  The County Court concluded that he could not pass on the credibility of the officer without knowing subsequent events, stating:

> don't ask me to pass on credibility of the officer without having the opportunity to find out what later transpired because, you know, if I stop six people for crossing the center line and subsequent events indicate all six were sober, then that indicates, well you know, [I have an officer with] faulty vision.

(v. 2, p. 22, l. 8-16).  Deputy Plutt testified from reading her reports and the day sheets of others before going to court.  (v. 2, p. 30, l. 15-21; v. 4, p. 34, l. 13-14).  Deputy Plutt could recall nothing about the driver, Mr. O'Neil, aside from his indicia of intoxication including what he was wearing, if he had glasses, or what type of shoes he had on.  (v. 2, p. 32, l. 4-17).

Deputy Plutt testified and the County Court found credible her testimony that Mr. O'Neil drove over the center yellow line almost crashing into Deputy Plutt's vehicle, then two more times crosses the center yellow line and then goes off the shoulder of the road and jerks his car back onto the highway at which point she activates her emergency lights. (v. 2, p. 17, l. 9-18); (v. 2, p. 17, l. 19).  Mr. O'Neil was apparently able to navigate his vehicle without incident the approximately quarter mile it took him to get into the town of Fairplay. (v. 2, p. 17, l. 20-21).

Because the County Court felt this type of criminal suppression, evidentiary issue was not his suit, the judge allowed counsel to file supporting briefs.  (v. 2, p. 64, l. 15-18).  Mr. O'Neil filed a Notice of Intent to Introduce Other Transactions (CRE 404(b)). (v. 1, p. 88-89).  In Mr. O'Neil's Notice contained the same witnesses as listed above. (v. 1, p. 88). The People filed a motion in response arguing under Colorado Rule of Evidence 608(b) this evidence could not be introduced because it was extrinsic and went to the deputy's character for truthfulness.  (v. 1, p. 83-84).

Another Motion's hearing was held on February 12, 2007. (v.3).  At that time Mr. O'Neil again argued to introduce evidence of similar transactions of the witness under 404(b).  (v. 3, p.10, l. 18-22).  The County

Court at that time struggled with understanding what character trait the other acts evidence would show. (v. 3, p. 22, l. 4-20). In the end, it too reserved ruling and allowed counsel to file supporting briefs. (v. 3, p. 25, l. 1-14).

Mr. O'Neil filed and Amended Notice providing the same list of witnesses with specific details about the individual, the time of day they were stopped, the date on which they were stopped, and dispositions in those cases. (v. 1, p. 74-76). Specifically, in at least two of those cases the individuals were pulled over by Deputy Plutt at night for weaving all over the road and almost hitting a delineator post. (v. 1, p. 75). Further, the other individuals were pulled over at night for reasons they found to be inaccurate and in one case the individual was told that the Deputy was investigating her sobriety because the car was involved in a DUI the night previous. (v. 1, p. 75).

The County Court issued its Findings and Order on February 16, 2007. (v. 1, p. 72). In its Findings the County Court concluded that the proffered evidence was "marginally relevant." (v. 1, p. 70). Although, it also provided that the evidence was "technically admissible." (v. 1, p. 70). The County Court used the circular argument that it had already decided there was probable cause/reasonable suspicion for the stop in an earlier

hearing.  (v. 1, p. 70).  Further, the County Court found that "whatever relevance the other stops might have is outweighed by the distraction of the jury from the central issue, whether the defendant was intoxicated." (v. 1, p. 71). For that proposition the County Court cited People v. Taylor, 545 P.2d 703 (1976). (v. 1, p. 71).

Further, the Court found that the proffered evidence would be of little, if any use to the jurors.  (v. 1, p. 71).  The County Court posited that while the jurors will be trying to determine whether the charges against the defendant have been proven beyond a reasonable doubt that they will also have to determine the veracity of the other witnesses as well.  (v. 1, p. 71). The County Court found it to be "unfair to ask them to do so without conducting complete trials in those matters." (v. 1, p. 71). The County Court then concluded that if it allowed the defendant to call these witnesses then it would lead to the "situation in which every trial a defendant could call every person who disagreed with the arresting officer."  (v. 1, p. 71).

The County Court found no commonality between the evidence that Mr. O'Neil intended to present and the stop of his vehicle.  (v. 1, p. 71).  In so finding the County Court noted that some were arrested and some were not, ultimately it concluded because of this the only reason this evidence

would be offered is that the witnesses disagree with the deputy. (v. 1, p. 71). Further, the County Court noted, "disagreement does not prove anything." (v. 1, p. 71); therefore, the County Court granted the People's Motion to Preclude Defense Evidence.  (v. 1, p. 72).

SUMMARY OF THE ARGUMENT

Trial courts are afforded considerable discretion in determining evidentiary questions of admissibility.  The standard of review for overturning the trial court on an evidentiary issue is for the appellant to show that the decision was manifestly arbitrary, unreasonable, or unfair.  People v. Ibarra, 849 P.2d 33, 38 (Colo. Ct. App. 1999).  The County Court heard all of the arguments on December 27, 2006 and February 12, 2007 and reviewed all of the pleadings in the matter.

Yet, the County Court erred when it found that proffered evidence by Mr. O'Neil against Deputy Plutt was inadmissible under Colorado Rule of Evidence 404(b), the Confrontation Clause of the 6th Amendment of the United States Constitution and the Right to a Fair Trial of the 4th and 14th Amendments of the United States Constitution.  Mr. O'Neil provided to the County Court specific individuals who would testify to specific previous acts of Deputy Plutt which went to her plan of operation and overly

aggressive bias to pull over individuals without legal justification during the time period in question.

The County Court did not investigate the merits of Mr. O'Neil's proffered evidence. It simply dismissed the evidence as "marginally relevant…Although technically admissible." (v. 1, p. 70).

The People have argued the applicability of CRE 608(b). Mr. O'Neil has never attempted to introduce this evidence under that rule. CRE 608(b) clearly provides that extrinsic evidence is not permitted to challenge the truthfulness of a witness. That must be proved by opinion or reputation evidence.

<u>ARGUMENT</u>

I.   THE COUNTY COURT ERRED WHEN IT PREVENTED THE DEFENDANT FROM INQUIRING INTO THE ALLEGED BIAS OF THE PEOPLE'S KEY WITNESS, DEPUTY PLUTT, UNDER C.R.E. 404(b).

The Purpose of allowing 404(b) evidence in at a trial is to allow the jury, not to infer conduct in conformity with previous acts, but to prove motive, intent, plan, scheme, identity, preparation, and knowledge of a witness. The Colorado Supreme Court in <u>People v. Spoto</u> outlined a four part test for determining the admissibility of 404(b) evidence. 795 P.2d 1314, 1318 (Colo. 1990). The Court provided:

> First, we must ask whether the proffered evidence relates to a material fact, i.e., a fact "that is of consequence to the determination of the action." CRE 401. If it does we proceed to the second question: is the evidence logically relevant, i.e., does it have "any tendency to make the existence of [the material fact] more probable or less probable than it would be without the evidence?" CRE 401. If the evidence is logically relevant, we then must determine whether the logical relevance is independent of the intermediate inference, prohibited by CRE 404(b). Finally, if the proffered evidence survives the first three parts of the analysis, we must assess whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. CRE 403.

795 P.2d at 1318.

First, a material fact of consequence to the action in Mr. O'Neil's case is whether there was reasonable suspicion to pull him over because, as alleged, he had failed to drive in a single lane. Deputy Plutt's rendition of the event was the only evidence against Mr. O'Neil; therefore, the proffered evidence that Kreg Kennedy and Garver Brown were both pulled over at night during the same general time period for exaggerated weaving all over the road, as was Mr. O'Neil, and that both were arrested, charged, and maintained innocence throughout their ordeal is pertinent to the determination of whether Mr. O'Neil was actually weaving and whether Deputy Plutt had reasonable suspicion to so believe.

Second, the proffered evidence is logically relevant. Again, the issue of whether or not Mr. O'Neil was weaving and thereby providing Deputy Plutt with reasonable suspicion would be less probable if other individuals testified that they were pulled over by the same deputy, on the same highway, at night, in the same general time period and given the same reasons (weaving) and that a jury determined, in one case, that the People did not prove their case beyond a reasonable doubt is logically relevant to Mr. O'Neil's case.

In effect, Mr. O'Neil was offering proof that a specific law enforcement officer was routinely engaging in a pattern of conduct and attempted to show she had an overly aggressive bias to pull over individuals whom she had a hunch were DUI and that was inappropriate and illegal. If such a law enforcement officer is exaggerating reasonable suspicion for stopping individuals the same theory of relevance that supports the admission of previous similar transactions against other witnesses also applies to this witness, be it ill will, motive, intent, plan, scheme, identity, bias, knowledge, or opportunity.

First, Deputy Plutt had opportunity being in such a position of authority; she had motive because she was the LEAF grant writer and

needed to improve numbers; and she had a plan of and pattern of conduct and overly aggressive bias that rose to the level of pulling people over to, not confirm, but dispel suspicion they may be driving drunk. (v. 1, p. 75, item e).

Third, the prior similar acts of Deputy Plutt are independent, not devoid, of the intermediate inference that she has a bad character.  The material fact here is whether Mr. O'Neil was weaving.  The prior similar acts of Deputy Plutt would allow the jury to *weigh* the credibility of her statement that Mr. O'Neil was driving all over the road.  The prior similar acts of Deputy Plutt do not require the inference she is a bad person or a lier.  They simply allow the jury to determine whether she, in fact, was engaged in a pattern of conduct that included pulling over individuals with an exaggerated basis.

Finally, the probative value of allowing the prior similar acts of Deputy Plutt is not substantially outweighed by the danger of unfair prejudice.  One of the functions of the rules of evidence is a truth-finding function.  The prior similar acts of Deputy Plutt are not unfairly prejudicial to the People, in effect they are matters of public record in many cases.  Further, any prejudice that may come from such proffered evidence would not substantially outweigh the probative value of such evidence.  The

probative value here is the possible pattern of conduct and overly aggressive

bias of Deputy Plutt to routinely pull over individuals without legal

justification during this time period.

II.     THE COUNTY COURT ERRED WHEN IT PREVENTED THE
        DEFENDANT FROM INQUIRING INTO THE ALLEGED BIAS
        OF THE PEOPLE'S KEY WITNESS, DEPUTY PLUTT, UNDER
        THE UNITED STATES CONSTITUTION AMENDMENT VI AND
        THE COLORADO CONSTITUTION ARTICLE II SECTION 16.

        The right to confront adverse witnesses brought up to testify against

the defendant in a criminal prosecution is "a fundamental element in the

panoply of constitutional protections afforded those accused of crimes."

Kogan v. People, 756 P.2d 945, 959 (Colo. 1988).

        In People v. Taylor the Colorado Supreme Court considered the

bounds of cross examination of a police officer's racial bias. 545 P.2d 703,

705 (Colo. 1976).  The Defendant inquired into the officer's racial bias by

questioning him as to specific arrests of African-Americans he had made

within months of the Defendant's arrest. 545 P.2d at 705.  The officer

disavowed even the slightly hint any of those arrested were racially

motivated.  Id.  In rebuttal, the Defendant was allowed to bring in the

witnesses who were arrested; they testified to racial slurs made by the

officer. Id.  The Supreme Court concluded the trial court had been correct to allow the evidence because it went to the officer's credibility.  Id.

However, the Court was careful to provide that while the evidence should be allowed within broad limits courts should not allow such examination when it would be irrelevant, have no probative force, or if the evidence would have little effect on the witness's credibility.  545 P.2d at 705.  The Court did not allow carte blanche the admission of such evidence; it provided, "while the character of a witness for truth and veracity may be shown, impeachment may not be accomplished by attacking the general character of a witness."  Id. at 706.  The Colorado Supreme Court considered this racial bias to be relevant to the issue of the witness's veracity.  Id.

Here, the County Court refused any presentation of Mr. O'Neil's proffered evidence.  Like Taylor, counsel asked Deputy Plutt on cross if she had ever pulled any body over without probable cause to which she responded, "never." (v. 4, p. 53, l. 11-13).  Mr. O'Neil should have been allowed to introduce extrinsic evidence to the contrary.  First, Mr. O'Neil was not even permitted to inquire of the Deputy whether the arrests had taken place, even though that was considered proper questioning under

<u>Taylor</u>.  Second, Mr. O'Neil was likewise precluded from calling witness

who would have testified they were pulled over without any justification.

Third, the County Court should have allowed the questioning of Deputy

Plutt as to this issue because of the effect it would have on her credibility.

The County Court violated Mr. O'Neil's constitutional right to

confront witnesses against him when it denied any possible mention of the

other instances of conduct without hearing from those individuals or

allowing inquiry of Deputy Plutt.  While the trial court has broad discretion

to permit or deny cross examination of certain topics it does not have the

right to deny defendants their constitutional right to confront their accuser.

It was manifestly unjust, unfair, and unreasonable to deny Mr. O'Neil even

the opportunity to bring in these witnesses in an evidentiary matter, in

addition to being denied the right to question Deputy Plutt in any way about

previous arrests she had made.  The County Court effectively denied

Mr.O'Neil his right to surmount his own defense by preventing any

questioning of Deputy Plutt about her pattern of conduct.

III.    THE COUNTY COURT ERRED WHEN IT DENIED
        DEFENDANT'S RIGHT TO A MEANINGFUL SUPPRESSION
        HEARING BY REFUSING TO CONSIDER EVIDENCE BEARING
        ON THE CREDIBILITY OF THE PEOPLE'S KEY WITNESS,
        DEPUTY PLUTT, UNDER THE UNITED STATES

CONSTITUTION AMENDMENT IV AND XIV AND THE
COLORADO CONSTITUTION ARTICLE II SECTION 7 AND 25.

In <u>People v. Adler</u>, the Colorado Supreme Court outlined the role of the trial judge in his general responsibilities.  629 P.2d 569, 572 (Colo. 1981).  The test in deciding whether the trial judge conduct did not comport with due process is "whether the trial judge's conduct so departed from the required impartiality as to deny the defendant a fair trial."  629 P.2d at 573. In <u>Adler</u> the defendant was appealing the decision of a trial judge who pointed out to the prosecution that they should call a certain witness for evidentiary purposes. <u>Id</u>.  The Court concluded this did not deny the defendant a fair trial.  <u>Id</u>. at 574.

In Mr. O'Neil's case he was denied the right to a meaningful suppression hearing.  The trial judge refused to hear from the witnesses. However, in his Findings and Order he states the testimony this witnesses would provide would be marginally relevant.  While the trial judge allowed two suppression hearings and two opportunities to file supporting briefs, it is Mr. O'Neil's contention that the trial judge did not afford him the opportunity to hold a meaningful hearing.  As such the conduct of the trial

judge was not impartial and in effect denied Mr. O'Neil the right to a fair trial.

The County Court did not aid in any fact finding in Mr. O'Neil's case and instead precluded any mention of any previous arrests made by Deputy Plutt. Further, it is the job of the jury to pass on the veracity of witnesses. Every time a witness is called the court is not required to have a trial within a trial to prove or disprove the witness. The trial judge stated that it would be unfair to ask them to perform such a service. While the court has a precarious duty to not let the sideshow take over the circus, it is not required that the court deny any mention of overly aggressive officer bias. The County Court denied Mr. O'Neil any potentially meaningful consideration of the issue because it would not take any evidence on the matter at his suppression hearing.

IV.    THE COUNTY COURT ERRED WHEN IT FOUND THE
       DEFENDANT'S PROFFERED EVIDENCE TO PROVE THE
       ALLEGED BIAS OF THE PEOPLE'S KEY WITNESS, DEPUTY
       PLUTT, WAS INSUFFICIENT.

Credibility is always an issue in any litigated proceeding. Here, the trial judge ruled that the evidence proffered by counsel was too general and insufficient to establish a plan by Deputy Plutt. (v.1, p. 71). It making this

determination it simply stated the fact that the proposed witnesses were either arrested, charged, and tried. (v. 1, p. 71). It noted "no commonality" aside from the fact that they all disagree with the actions of the deputy. (v. 1, p. 71). Mr. O'Neil submits that this is a serious understatement that these individuals did not simply "disagree" with Deputy Plutt's action a few of them challenged her actions in court and won. The issue here is that the County Court would not permit any testimony on these precise points.

The County Court went further to point out, "disagreement does not prove anything." (v. 1, p.71). Mr. O'Neil submits that he disagrees with the People's prosecution of him; however, that is the basic tone of the adversarial process. That is an incorrect statement of his offer of proof in this case.

At the suppression hearing the County Court stated that he wanted to know the outcome of the case because he was being asked to pass on the credibility of the officer. He stated if he stopped six people for weaving and all turned out to be sober then we may have a faulty vision problem. However, when presented with substantially similar evidence he found "no commonality." The offer of proof was specific and articulated a clear basis for allowing, at least, the presentation of such evidence. On at least four

separate occasions in writing and orally Mr. O'Neil made the same offer of

proof and was categorically denied.

## CONCLUSION

The County Court has effectively denied the right of a citizen to

challenge the credibility of a law enforcement officer.  While a court must

safeguard against spurious claims, the right to due process and a fair trial

must allow citizens from a small community the right to defend themselves

from substantial claims of unjustified law enforcement conduct.  If denied

that right, law enforcement has an unfetter stamp of approval to conduct

unchallengeable criminal investigations in any way they see fit.  For the

aforementioned reasons, Mr. O'Neil respectfully requests that this Court

REVERSE the decision of the County Court Judges.


Respectfully Submitted,


____S// original signatures on file____
Todd Barson, 23529
Heather Beattie, 37417

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of June, 2007, this OPENING BRIEF was e-filed via Lexis Nexis File and Serve and that the original was sent to the court and a copy was sent via U.S. postal service self addressed postage pre-paid to the following:

>   Clerk of the County Court
>   Park County Courthouse
>   300 Fourth Street
>   Fairplay, CO 80440

>   Office of the District Attorney
>   Eleventh Judicial District
>   P.O. Box 1206
>   Fairplay, CO 80440

_____
Todd Barson